Argued and submitted May 27, 1998, reversed and remanded in part; otherwise affirmed May 5, 1999

ADVOCATES FOR EFFECTIVE REGULATION,
Agripac, Inc.,
an Oregon corporation,
Bulk Handling Systems, Inc.,
an Oregon corporation,
Cascade Plating & Machine, Inc.,
an Oregon corporation,
Gheen Irrigation Works, Inc.,
an Oregon corporation,
Laurence David, Inc.,
an Oregon corporation,
Molecular Probes, Inc.,
an Oregon corporation,
Newood Products of Oregon, Inc.,
an Oregon corporation,
Purakal Industries, Inc.,
an Oregon corporation,
States Industries, Inc.,
an Oregon corporation,
Trus Joist MacMillan,
an Idaho corporation,
The Willamette Valley Co.,
an Oregon corporation, and
Clarke's Sheet Metal, Inc.,
an Oregon corporation,
*Appellants,*
*v.*
CITY OF EUGENE,
an Oregon municipal corporation,
*Respondent,*
*and*
TOXICS RIGHT TO KNOW COMMITTEE,
an Oregon political committee,
Jennifer Gleason, Steve Johnson
and Mary O'Brien, individually,
*Intervenors - Respondents.*
(16-96-11202; CA A98053)

981 P2d 368

Thomas R. Wood argued the cause for appellants. With him on the opening brief were Richard S. Gleason, Keith M. Garza and Stoel Rives LLP; with him on the reply brief were Richard S. Gleason and Stoel Rives LLP.

Jerome Lidz argued the cause for respondent. With him on the brief were Glenn Klein, Danette M. Bloomer and Harrang Long Gary Rudnick P.C.

Charles M. Tebbutt argued the cause for intervenors - respondents. With him on the brief was Western Environmental Law Center.

Before Landau, Presiding Judge, Deits, Chief Judge, and Wollheim, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs, a number of businesses operating in the City of Eugene, brought this action challenging the validity of the "Right to Know Initiative" (Initiative), a voter-approved amendment to the Eugene City Charter that imposes fees and reporting requirements on users of hazardous substances. The trial court upheld the validity of the Initiative. We conclude that three articles in the Initiative are invalid and therefore reverse and remand in part and affirm in part.

## I. FACTUAL BACKGROUND

The electorate of the City of Eugene (City) enacted Measure 20-75, an amendment to the Eugene City Charter entitled the "Right to Know Initiative." The Initiative applies to "hazardous substance users," defined—subject to exemptions not applicable to this case—as entities that employ at least 10 people and have a total "input" of more than 2,640 pounds of hazardous substances during a calendar year. "Input" of hazardous substances refers to the total quantity of hazardous substances stored at a facility at the beginning of the year, plus the total quantity of hazardous substances brought on site, plus any hazardous substances produced at the facility.

Article III of the Initiative defines "hazardous substances" by reference to several lists of substances mentioned in federal statutes and regulations. The Initiative also incorporates substances that might later be added to those statutes and regulations. The listed substances include:

"1. any substance listed or described, as of the effective date of this Act, on any of the following lists of chemicals regulated or identified as of concern:

"* * * * *

"(d) U.S. Environmental Protection Agency Active Ingredients, including Special Review, Canceled/Denied or Suspended, and Restricted Use Pesticides, pursuant to the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA; 7 USC § 136 et seq.);

"(e) U.S. Environmental Protection Agency List 1 Inert Ingredients of Pesticides ('Inerts of Toxicological Concern'), pursuant to the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA; 7 USC § 136 et seq.);

"* * * * *

"5. any substances added, subsequent to the effective date of this Act, to the lists described [above]."

Article V of the Initiative requires hazardous substance users to file an annual "materials balance report" listing inputs and outputs of hazardous substances. A "materials balance report" is an accounting of the flow of hazardous substances into and out of the facility through its products and wastes "such that inputs equal outputs of each hazardous substance to the accuracy of the smallest accounting units * * *." The "smallest accounting unit" is defined as 2.2 pounds for hazardous substances and .022 pounds for extremely hazardous substances. "Extremely hazardous substances" are those listed in the federal Emergency Planning and Community Right to Know Act, 42 USC § 11002 (1995). Hazardous substance users also are required to pay a fee to cover the costs of the reporting program.

The Right to Know Initiative creates a Toxics Board to develop the fee structure, to adopt appropriate forms, and to enforce its provisions. In the exercise of its enforcement authority, the board may, among other things, impose penalties of up to $25,000 per day. The Eugene City Manager also is given enforcement authority, including the authority to order hazardous substance users to cease and desist using hazardous substances in the city.

Plaintiffs brought this action for declaratory and injunctive relief against the City of Eugene. Their complaint alleged a dozen counts in support of their claim for declaratory relief. Four of those counts are pertinent to this appeal.

In Count 1, plaintiffs alleged that the fee requirement imposed by the Right to Know Initiative is invalid, because it is prohibited by state law, which provides that quantity-based local government assessments of hazardous substances must not be used to duplicate existing state regulatory programs. According to plaintiffs, the fee imposed by

the Initiative is a quantity-based fee and is used for purposes that duplicate State Fire Marshal hazardous substance reporting regulations. In Count 4, plaintiffs alleged that, to the extent that the Initiative regulates pesticides, it is preempted by state law, which prohibits local government regulation of pesticide sale or use. In Count 7, plaintiffs alleged that the Initiative is unconstitutional, because it requires hazardous substance users to report hazardous substances at levels so low as to be impossible for them to comply. According to plaintiffs, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that regulatory statutes not be impossible to comply with. Finally, in Count 8, plaintiffs alleged that the portion of the Initiative's definition of "hazardous substances" that incorporates substances listed by the federal authorities after enactment of the amendment constitutes an unlawful prospective delegation of legislative authority.

The Toxics Right to Know Committee and several of its members (intervenors) were permitted to intervene. The parties filed cross-motions for summary judgment. The trial court granted the motions of the City and intervenors, denied plaintiffs' motion and entered a judgment in favor of the City and intervenors on all counts.

## II. ANALYSIS OF CLAIMS ON THE MERITS

On appeal, plaintiffs assign error to the trial court's decision to deny their motion for summary judgment and to grant the motion of the City and intervenors as to the four counts enumerated above. For the reasons that follow, we conclude that the trial court erred in ruling against plaintiffs as to Counts 1, 4 and 8, but was correct in its disposition as to Count 7. The parties agree and we concur, that there are no genuine issues of material fact; our review therefore is limited to whether any of the parties was entitled to judgment as a matter of law. ORCP 47 C.

### A. *Count 1: Preemption of Local Fee Assessment*

Plaintiffs contend that the trial court erred in rejecting their contention that Article VII of the Right to Know Initiative, which imposes an annual fee on hazardous substance

users, is invalid. According to plaintiffs, the Oregon Legislature already enacted a state right to know law, which requires hazardous substance users to provide reports of hazardous substance use to the Office of the State Fire Marshal and to pay fees in support of that regulatory program, based on the quantity of hazardous substances used. That law, they argue, provides that any local assessments on hazardous substances that are based on the quantity of the substances must be used solely to supplement, and not to duplicate, the State Fire Marshal's regulatory program. Plaintiffs argue that the Right to Know Initiative requires a fee from all entities that annually use more than 2,640 pounds of a hazardous substance, which, in plaintiffs' view, constitutes a fee "based on" the quantity of hazardous substances. Hence, if the funds are not used solely to supplement the state regulatory program, the fee is invalid. In this case, plaintiffs argue, the City's program plainly overlaps with the state program. As a result, they conclude, the fee is invalid.

The City and intervenors respond with three arguments. First, they contend that plaintiffs' challenge to the validity of the fee is not ripe for judicial review, because the Toxics Board had not yet—at least not as of the time of the hearing—approved a specific fee structure for hazardous waste users. Second, they contend that the fee imposed by the Initiative is not "based on" quantity, because it does not vary with quantity. According to the City and intervenors, the Initiative simply describes who is subject to the reporting program by exempting small quantity users. That, they argue, does not constitute imposing a fee "based on" the quantity of the hazardous substances used. Third, the City and intervenors argue that, in any event, the funds derived from the fees would not be used to duplicate any state programs, because the City's reporting program requires "more and different information."

■ We begin with the contention that plaintiffs' challenge to the validity of the fee provision is not ripe for review. The exercise of judicial power requires a concrete controversy that is based on present facts, not hypothetical possibilities. *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982); *Tanner v. OHSU*, 157 Or App 502, 509, 971 P2d 435

(1998). A facial challenge to the validity of an enactment generally presents such a concrete controversy; the question is whether the challenged enactment is valid as written, as opposed to validly applied to a given set of facts. *See Cope v. City of Cannon Beach*, 317 Or 339, 342-43, 855 P2d 1083 (1993) (facial challenge to validity of local ordinance is ripe for review).

In this case, plaintiffs argue that Article VII of the Eugene Right to Know Initiative, by its terms, conflicts with state law by imposing a quantity-based fee to fund programs duplicative of state programs. It is, in other words, a facial challenge to the validity of the Initiative. The City's and intervenors' argument that plaintiffs' challenge nevertheless is not ripe is based on the assumption that Article VII, in fact, does not impose a quantity-based fee. In making that argument, however, the City and intervenors merely assume away the very issue in contention, namely, whether the Initiative—independent of any future action by the Toxics Board—requires the imposition of a quantity-based fee. That question is not hypothetical, and its answer requires no speculation as to future facts. Either the Initiative on its face conflicts with state law, or it does not. Plaintiffs' challenge to the validity of the fee is ripe for review. We turn, then, to the merits of plaintiffs' challenge.

■■ In determining whether a local government enactment has been preempted by state law, we examine the relevant statutes to determine whether the local enactment is incompatible with legislative policy, either because it cannot operate concurrently with state law or because the legislature intended state law to have preemptive effect. *City of LaGrande/Astoria v. PERB*, 281 Or 137, 148-49, 576 P2d 1204, *adhered to on reh'g* 284 Or 137, 586 P2d 765 (1978). In this case, there is no dispute that the legislature intended state law to preempt local law to some extent. The only question is the extent of the intended preemptive effect of state law. We ascertain the legislature's intentions in that regard by reference to the usual sources of statutory text in context and, if necessary, legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Oregon's right to know statute is intended to promote public health and safety through the collection and retention of information about the use of hazardous substances in the state. The legislature specifically found, among other things that:

"(1) The public's health and safety may be endangered by a lack of knowledge about hazardous substances located within this state.

"(2) Information on the use of hazardous substances in this state should be made readily available to members of the public, allowing them to take measures to protect themselves against dangers posed to health and safety."

ORS 453.312. The right to know statute requires the Oregon State Fire Marshal to develop an annual hazardous substance survey and to distribute the survey to employers in the state. ORS 453.317(1). The survey must require employers, among other things, to identify and classify hazardous substances and to estimate the approximate amount of the substances and their location on site. ORS 453.317(1). Upon receipt of the completed surveys, the Fire Marshal is required to retain the information for a specified period of time and to provide copies of the information to local public health authorities, fire districts, emergency reporting agencies, and other public agencies. ORS 453.322. To support the costs of the reporting program, the law requires the Fire Marshal to assess a fee for possession of hazardous substances. ORS 453.400; ORS 453.402. The fees must be established by rule and must be "based upon the aggregate amount of the single largest annual aggregate substance reported that is manufactured, stored or used" at a given facility. ORS 453.402(2).

In accordance with that statute, the State Fire Marshal developed specific reporting requirements that include reporting quantities of hazardous substances that an employer manufactures, generates, uses, stores, possesses, or disposes of in an amount above a "reportable quantity[.]" OAR 837-085-0070. A "reportable quantity" is, among other things, a hazardous substance in quantities equal to or greater than 50 gallons, 200 cubic feet or 500 pounds. *Id.* Covered employers are required to calculate the average daily

amount, the maximum daily amount, and the total amount of any hazardous substance that the employer manufactures, generates, uses, stores, possesses, or disposes of each year. OAR 837-085-0080. Covered employers are further required to disclose information that includes:

"(d) Information about each reportable hazardous substance meeting the reportable quantity thresholds including, but not limited to:

"(A) The common name or trade name for each reportable hazardous substance;

"(B) The chemical name of the hazardous ingredient present in the highest concentration in each reportable hazardous substance;

"(C) Information regarding whether the substance is pure or a mixture;

"(D) The status of [the] hazardous substance as it is used in the facility, i.e., no change, new, change made, no longer used and/or reportable, or stayed the same;

"(E) The physical state of the hazardous substance as it is released into the environment at STP (Standard Temperature and Pressure) relating whether it is a solid, liquid or a gas;

"(F) The unit of measure used to report the quantity range of the hazardous substance, i.e., relating whether it is reported in pounds, gallons, cubic feet or millicuries;

"(G) The average amount of each reportable hazardous substance;

"(H) The maximum amount of each reportable hazardous substance;

"(I) The amount used per year of each reportable hazardous substance;

"(J) The total estimated number of days each hazardous substance was on-site;

"* * * * *

"(N) The Chemical Abstract Service (CAS) number if known for each reportable hazardous substance[.]"

OAR 837-085-0090(5). Covered employers are also required to maintain complete and accurate records of each hazardous substance that they manufacture, generate, use, store, possess or dispose of, including material safety data sheets, production records, waste, and recycling records. OAR 837-085-0110. The Fire Marshal also publishes a fee schedule that includes a hazardous substance possession fee, the amount of which varies according to the quantity of the substance. *See generally* OAR 837-090-1030. The fee schedule includes a hazardous substance possession fee, which is assessed in different amounts for each of three "quantity ranges." *Id.*

In 1991, the legislature amended the state statute, among other things, to limit the extent to which local governments may impose fees on the possession of hazardous substances. That amendment, codified at ORS 453.402(6), provides, in part:

> "Local government assessments of hazardous substance fees based on quantity or the hazardous substance survey shall be used solely to supplement and not to duplicate the State Fire Marshal's programs under ORS 453.307 to 453.414 and shall be billed and collected only through contract with the State Fire Marshal."

The statute does not prohibit a local government from assessing a fee "based on quantity" of hazardous substances. If a local government does so, however, the statute imposes restrictions on how the funds may be collected and spent.

■ The statute does not define precisely what is meant by "based on quantity." In ordinary parlance, "based on"—or its synonymous phrasing "on the basis of"—refers to a principal component of determination. *Webster's Third New Int'l Dictionary*, 180, 182 (unabridged ed 1993). In the case of the Eugene Right To Know Initiative, a principal component of determining whether a user pays a fee is the quantity of hazardous substances used. If a user that employs at least 10 people has annual inputs of 2,640 pounds of any hazardous substance, the user must pay a fee. If the user has annual inputs of less than 2,640 pounds, the user is not required to pay a fee. Thus, the quantity of hazardous substance determines whether the user pays a fee.

The City and intervenors insist that, under the Initiative, the quantity of hazardous substances "defines 'users' that must comply with the requirements of the [Initiative] * * *." The fact remains, however, that "the requirements" of the Initiative means, among other things, paying a fee. The City and intervenors argue that a fee "based on quantity" must mean one that is graduated, that is, one that sets different fees for different quantities of hazardous substances. They argue that an example of such a graduated, quantity-based fee is the State Fire Marshal's fee. The City and intervenors do not explain, however, why the fee required under the Initiative does not satisfy that very definition. The Initiative imposes, in effect, a two-tiered fee, triggered by a quantity of hazardous substances. We do not understand why that two-tiered fee is less of a fee based on quantity than is the State Fire Marshal's three-tiered fee.

The City and intervenors complain that, if the Initiative cannot set such a quantitative threshold, local governments can have no threshold at all. The argument is unavailing. Local governments remain free to determine any number of alternative thresholds; quantity of hazardous substances certainly is not the only available criterion of determining the scope of regulatory authority.[1]

We conclude that the fee imposed by the Eugene Right to Know Initiative is a fee "based on quantity" within the meaning of ORS 453.402(6). That does not mean that the fee is prohibited. It does mean that, to be valid, it must be used "solely to supplement and not to duplicate" the reporting programs administered by the State Fire Marshal. ORS 453.402(6).

The statute does not define precisely what "solely to supplement and not to duplicate" means. In ordinary usage, "solely" is defined as that which is "to the exclusion of alternative or competing things[.]" *Webster's Third New Int'l Dictionary*, 2168 (unabridged ed 1993). "Supplement" means

---

[1] The Office of State Fire Marshal, for example, defines "covered" employers in terms of, among other things, standard industrial classifications. *See* OAR 837-085-0030. The Eugene Right to Know Initiative itself likewise includes nonquantitative categorical exemptions for state and federal facilities and public educational institutions.

"to fill up or supply by additions: add something to: fill the deficiencies of[.]" *Id.* at 2297. And, "to duplicate" means "to be or make a duplicate, copy, or transcript of," and "duplicate" as an adjective (as in "duplicate copy") means "consisting of or existing in two corresponding or identical parts or examples[;] * * * being exactly the same as one or more others of its kind." *Id.* at 702.

■ Thus, giving the relevant terms their meaning in common usage, the statute directs that a local, quantity-based fee must be used only to add something to or fill the deficiencies of the state program, and not to make an identical copy of the state program. We note that the prohibition is stated in the conjunctive; the fee collected by a local government must be used so that it both solely supplements *and* does not duplicate the State Fire Marshal's program.

■ We turn, then, to the question whether the Initiative solely supplements and does not duplicate the State Fire Marshal's program. As we have noted, the State Fire Marshal's program is intended, among other things, to protect the public health and safety by making available to the public information about hazardous substances located within the state. ORS 453.312. The Eugene Right to Know Initiative likewise is intended to protect human health and the environment by providing to the public information about hazardous substances in the local community. The purposes of the two regulatory programs, therefore, clearly overlap.[2]

The programs overlap in effect, as well. The State Fire Marshal's program requires covered employers to complete an annual report that includes the identification of each hazardous substance by full chemical name and CAS number; the quantity of each hazardous substance, in terms of the maximum, minimum, and average amounts on site each year; the amount of hazardous substances used each year; the status of each hazardous substance as it is used, that is,

---

[2] The City argues that the purposes are different. According to the City, the purpose of the state right to know statute is "to impose a fee on the possession of hazardous substances at facilities in this state." In so arguing, the City quotes ORS 453.398, which states the purpose of the state hazardous substance possession fee only. The City neglects to mention ORS 453.312, which sets forth the legislature's findings as to the entire right to know statute.

whether there was a change in the substance as it was used; and the physical state of the hazardous substance as it is released into the environment, that is, whether it is a solid, liquid, or gas. OAR 837-085-0090(5). The Eugene Right to Know Initiative requires covered users to submit an annual report that includes the identification of each hazardous substance by full chemical name and CAS number; the amount of each hazardous substance used each year; and the physical state of the hazardous substance as it is released into the environment, including the quantity released in the air, into surface waters, or shipped from the facility as waste. The Initiative also requires covered users to produce a materials balance report that accounts for the flow of individual hazardous substances into a facility, through its processes, and into its products and wastes.

Thus, although the Initiative does not duplicate the state program in every detail, it is also not confined to adding to the perceived deficiencies of the state program. Substantial parts of the Initiative require information identical to the information employers must provide to the State Fire Marshal. Therefore, the fee collected under the Initiative is not used "solely to supplement" the State Fire Marshal's program. We conclude that the fee collected under the Initiative violates ORS 453.402(6) and that the trial court erred in granting summary judgment to the City and intervenors and in denying plaintiffs' motion for summary judgment on Count 1.

B. *Count 4: Preemption of Pesticide Regulation*

Plaintiffs contend that the trial court erred in concluding that state pesticide laws do not preempt the City's authority to regulate the use of pesticides in accordance with the Right to Know Initiative. They argue that Oregon's pesticide statute prohibits local governments from adopting or enforcing an ordinance, rule, or regulation regarding pesticide "sale or use" and that the imposition of reporting requirements concerning the use of pesticides, along with the provision for penalties for noncompliance with those requirements, constitutes "regulation" regarding the "sale or use" of pesticides. The City and intervenors argue that the regulations imposed by the Initiative do not amount to regulations

of the "sale or use" of pesticides. According to the City and intervenors, the Initiative requires only periodic reporting, and that does not amount to "regulation" of the "sale or use" of pesticides.

Oregon's Pesticide Control Act (Act) is intended to regulate "the formulation, distribution, storage, transportation, application and use of pesticides." ORS 634.005. "Pesticides" is defined broadly to include defoliants, desiccants, fungicides, herbicides, insecticides, nematocides, plant regulators and

> "[a]ny substance, or mixture of substances intended to be used for defoliating plants or for preventing, destroying, repelling or mitigating all insects, plant fungi, weeds, rodents, predatory animals or any other form of plant or animal life which is, or which the department may declare to be a pest, which may infest or be detrimental to vegetation, humans, animals, or be present in any environment thereof."

ORS 634.006(8)(h). In adopting the Act, the legislature made its preemptive intentions clear:

> "The Legislative Assembly hereby determines that the citizens of this state benefit from a system of safe, effective and scientifically sound pesticide regulation. The Legislative Assembly further finds that *a uniform, statewide system of pesticide regulation that is consistent, coordinated and comports with both federal and state technical expertise is essential to the public health, safety and welfare and that local regulation of pesticides does not materially assist in achieving these benefits.*"

ORS 634.055 (emphasis added). Consistent with that general statement of intent, the legislature specifically provided as to local regulation of pesticides:

> "No city, town, county or other political subdivision of this state shall adopt or enforce any ordinance, rule or regulation regarding pesticide sale or use, including but not limited to:
>
> "(1) Labeling;
>
> "(2) Registration;
>
> "(3) Notification of use;

"(4) Advertising and marketing;

"(5) Distribution;

"(6) Applicator training and certification;

"(7) Licensing;

"(8) Transportation;

"(9) Packaging;

"(10) Storage;

"(11) Disclosure of confidential information; or

"(12) Product composition."

ORS 634.057. It bears emphasis that the statute prohibits not merely "regulation" of pesticide sale or use, but more broadly the adoption or enforcement of "any ordinance, rule or regulation *regarding*" pesticide sale or use. (Emphasis added.) It also bears emphasis that the list of what constitutes prohibited local interference with state regulation of "sale or use" of pesticides, although long, is not exhaustive. The legislature expressly provided that matters not subject to local regulation are not limited to those listed. Indeed, the legislature spelled out only three exceptions to the scope of its preemption, namely, regulations of pesticides "strictly necessary" to comply with (1) the Uniform Building Code; (2) a uniform fire code; or (3) any requirement of state or federal pesticide regulation. ORS 634.063.

The Eugene Right to Know Initiative applies to users of pesticides. Article III.E.1.(d) and (e) of the Initiative specifically refer to pesticides listed pursuant to the federal pesticide law. There is no question but that the pesticides listed in Article III.E.1.(d) and (e) are encompassed by the Oregon Act.[3] The question put to us is whether the Right to

---

[3] The Initiative incorporates by reference the Federal Insecticide, Fungicide and Rodenticide Act, which defines "pesticide" to mean:

"(1) [A]ny substance or mixture of substances intended for preventing, destroying, repelling or mitigating any pest, (2) any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, and (3) any nitrogen stabilizer * * *."

7 USC § 136(u) (1980). Federal Environmental Protection Agency regulations similarly define "pesticide" as

Know Initiative constitutes an "ordinance, rule or regulation regarding * * * sale or use" of pesticides. ORS 634.057.

■ We begin with whether the Initiative is an "ordinance, rule or regulation." The City and intervenors contend that it is not, because the imposition of fees and reporting requirements does not constitute "regulation." We cannot accept the contention for several reasons. First, as we have noted, the preemptive effect of the state statute is not limited to "regulations." It encompasses "any ordinance, rule *or* regulation regarding" the sale or use of pesticides. Second, and in any event, the amendment is a "regulation" under any reasonable definition of the term. In common usage, regulation refers to "an act of regulating[;] * * * an authoritative rule or principle dealing with details of procedure[.]" *Webster's Third New Int'l Dictionary*, 1913 (unabridged ed 1993). To "regulate," in turn, means "to govern or direct according to rule[;] * * * to bring under the control of law or constituted authority[.]" *Id.* There can be no question but that the Right to Know Initiative sets forth an authoritative rule that governs the reporting of hazardous substances. As such, it constitutes a "regulation" within the meaning of the statute.

■ We turn to whether the Initiative "regard[s]" the "sale or use" of pesticides. The City and intervenors contend that the Initiative does not regard the sale or use of pesticides, because it implicates none of the matters specifically listed as being preempted in ORS 643.057. According to the City and intervenors, as long as users of hazardous substances comply with the fee and reporting requirements of the Initiative, they are free to sell or use the substances and to do any of the activities described in the statute as being beyond local control. As a result, the City and intervenors conclude, the requirements of the Initiative do not regard the "sale or use" of pesticides within the meaning of the statute. We disagree.

---

"any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, or intended for use as a plant regulator, defoliant, or desiccant * * *."

40 CFR § 152.3(s). Both definitions are identical in all material respects to the definition of the term in ORS 634.006(8).

To begin with, there can be no doubt as to the legislature's preemptive intentions. It stated that a "uniform, statewide system of pesticide regulation" is essential to public health and that "local regulation of pesticides does not materially assist in achieving these benefits." ORS 634.055. It further stated that there are only three exceptions to the preemptive scope of the state statute, none of which is relevant in this case. ORS 634.063. Finally, it enumerated a list of activities that are specifically preempted, noting that the list is merely indicative—and not exhaustive—of what is beyond the proper scope of local government regulation. That list of preempted local government activities includes registration and notification of use. ORS 634.057(2) and (3).

The Eugene Right to Know Initiative requires hazardous substance users to provide notice, including an annual accounting of inputs and outputs, of the use of hazardous substances. The users are subject to penalties of up to $25,000 per day for failure to comply with those notice of use requirements and are further subject to orders to cease and desist any use of hazardous substances within the city. By any reasonable definition of the terms, what the Initiative imposes is regulation "regarding" the "use" of hazardous substances. We conclude that the inclusion of pesticides, as listed in Article III.E.1(d) and (e) of the Initiative, cannot be reconciled with the preemptive provisions of ORS 634.055, ORS 634.057, and ORS 634.063. The trial court therefore erred in granting summary judgment to the City and intervenors and in denying plaintiffs' motion for summary judgment on Count 4.

## C. *Count 7: Impossibility of Compliance*

■ Plaintiffs contend that the trial court erred in rejecting Count 7, which alleged a facial challenge to the validity of the reporting requirements of the Eugene Right to Know Initiative on due process grounds. According to plaintiffs, the Initiative, on its face, requires the impossible because the information that it requires cannot be obtained and because the level of reporting accuracy it requires is mathematically impossible to achieve. In support of their contentions, plaintiffs rely on affidavits of expert witnesses, who testify as to the impossibility of complying with the requirements of the

Initiative. At oral argument, plaintiffs conceded that it may not be impossible for some hazardous waste users to comply with the Initiative, but they insisted that, because they offered evidence of impossibility, which the City and intervenors did not controvert, they have established the impossibility of complying with the Initiative as a matter of law. The City and intervenors respond that plaintiffs' affidavits are irrelevant. Because plaintiffs mount a facial challenge to the Initiative, the City and intervenors argue, plaintiffs must establish that, on the face of the Initiative, there is a violation of plaintiffs' due process rights. Because they have failed to do that, they conclude, the trial court did not err in dismissing Count 7. We agree with the City and intervenors.

 A facial challenge, by definition, is a contention that a law is invalid *as written*. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 557-58, 871 P2d 106 (1994). The challenge is evaluated without reference to adjudicative facts. *Vannatta v. Keisling*, 324 Or 514, 518, 931 P2d 770 (1997). The sole question is whether, on *any* set of facts, the challenged law is invalid *in toto. Id.*

In this case, plaintiffs do not argue that the Eugene Right to Know Initiative is unconstitutional as written. Their first argument is that the Initiative requires a level of reporting detail that is impossible to comply with. The impossibility of complying with the detail required by the Initiative, however, depends on adjudicative facts, which are not appropriately considered in a facial challenge. The only question, as we have stated, is whether the law is invalid under any set of facts. In this case, plaintiffs concede that, under some facts, it may well be possible to comply with the Initiative. Plaintiffs therefore cannot prevail on that argument in support of their facial challenge. Plaintiffs' second argument is that certain information required by the Initiative is impossible for hazardous substances users to obtain. Again, whether that is so cannot be determined from the face of the Initiative or the law relevant to it. It can only be determined by reference to affidavits submitted to the trial court. Resort to such affidavits is not the appropriate way to resolve a facial challenge to the validity of an enactment. Plaintiffs therefore cannot prevail on that argument in support of their facial challenge,

either. We conclude that the trial court did not err in ruling in favor of the City and intervenors on Count 7.

### D. *Count 8: Unlawful Delegation of Legislative Authority*

Plaintiffs finally contend that the trial court erred in ruling in favor of the City and intervenors on Count 8, which alleged that, by incorporating into the definition of "hazardous substances" materials that federal regulatory authorities may decide to regulate at some time in the future, the Eugene Right to Know Initiative unlawfully delegates legislative authority. Plaintiffs contend that the Initiative delegates to federal regulatory agencies the authority to amend the City Charter by altering, without voter approval, the definition of "hazardous substances" and that doing so violates the rule against "prospective delegation." The City and intervenors acknowledge that the Initiative does effectively grant federal regulatory agencies the authority to amend the City Charter. They insist that the Initiative nevertheless does not violate the rule against prospective delegation, because the prohibition applies only to the enactment of "law," and the adoption of amendments to a city charter is not a "law."

Article I, section 21, of the Oregon Constitution, provides: "nor shall any law be passed, the taking effect of which shall be made to depend upon any authority * * *." That provision has been construed to prohibit laws that delegate the power of amendment to another governmental entity.[4] A state statute, for example, cannot incorporate future federal regulations not yet promulgated at the time of enactment; the effect of doing so is to delegate the power to amend the statute to the federal regulatory authority. *Seale et al v. McKennon*, 215 Or 562, 572-73, 336 P2d 340 (1959); *State v. Charlesworth/Parks*, 151 Or App 100, 106, 951 P2d 153, *rev den* 327 Or 82, 961 P2d 216 (1997). Likewise, a local government ordinance cannot incorporate state statutes not yet enacted. *City of Salem v. Jungblut*, 83 Or App 540, 543, 732

---

[4] Article III, section 1, which divides the government into three departments, and Article IV, section 1, which vests the legislative authority of the state in the legislature subject only to the powers of the initiative and the referendum, also have been cited as authority for the same rule. *See, e.g., Hillman v. North. Wasco Co. PUD*, 213 Or 264, 277-79, 323 P2d 664 (1958).

P2d 919 (1987); *Brinkley v. Motor Vehicles Division*, 47 Or App 25, 27, 613 P2d 1071 (1980).

██ Whether the rule against prospective delegation applies to municipal charters has not been addressed directly by the courts. The matter requires little discussion, however. Article I, section 21, applies to "laws." Certainly, a municipal charter is a "law." Charters are the organic *laws* of municipalities. *See Harder et ux v. City of Springfield et al.*, 192 Or 676, 683, 236 P2d 432 (1951) ("A city charter constitutes the organic law of a municipality."). *See generally* 2A *McQuillin Mun. Corp.* § 9.03 (3d ed 1996) ("the city charter represents the supreme law of the city * * *").

The City and intervenors read Article I, section 21, to apply only to a particular species of law enacted by a legislative body, such as a statute adopted by a legislature or an ordinance adopted by a city council. To be sure, the term "law" can be used in that fashion. Even if the rule against prospective delegation applies only to legislative enactments, however, the fact remains that a city charter amendment adopted by a vote of the people is a legislative enactment. Article XI, section 2, of the Oregon Constitution, authorizes the voters of every city and town "to enact and amend their municipal charter." The power granted in that section constitutes an expansion of the power of initiative and referendum reserved by the people in Article IV, section 1(5), as to "local, special and municipal legislation of every character in or for their municipality or district." That power reserved by the people is a legislative power. As the Supreme Court explained in *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 287, 639 P2d 90 (1981):

> "Initiative and referendum are a sharing of legislative power between the people and their representatives, not a grant of additional legislative power to either."

*See also* 2A *McQuillin Mun. Corp.* § 9.07 (3d ed 1996) ("A home rule charter as to all proper provisions has the same force and effect as a charter granted directly by the legislature. That is, it has the force and effect of an act of the legislature." (Footnotes omitted.)).

We conclude therefore that the rule against prospective delegation applies to municipal charters. It follows that Article III.E.5, which incorporates in its definition of "hazardous substances" federal regulations not promulgated at the time the Eugene Right to Know Initiative was enacted, is invalid and that the trial court erred in granting the summary judgment motions of the City and intervenors and in denying the motion of plaintiffs as to Count 8.

E. *Severability*

At oral argument, the parties raised the matter of severability. The Initiative contains a severability clause, which provides that the invalidity of any part of the Initiative is not intended to affect the validity of the remainder. The parties dispute the extent to which the invalidity of the parts at issue in this case would require invalidation of the remainder, notwithstanding the severability clause. That issue was not addressed by the trial court, because the court found in favor of the City and intervenors on all counts. We will not address it for the first time on appeal. *Anderson v. Carden*, 146 Or App 675, 689, 934 P2d 562, *rev den* 326 Or 68, 950 P2d 892 (1997).

Reversed and remanded for entry of judgment in favor of appellants as to Counts 1, 4 and 8; otherwise affirmed.