Argued and submitted April 8, affirmed November 14, 2013, petition for review denied March 14, 2014 (354 Or 840)

Gary HALE,
Jan Wroncy, Forest Wroncy-Hale, Carolyn Ashlock,
Warren Trotter, David Eisler, and Sarah Sheffield,
*Plaintiffs- Appellants,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Lane County Circuit Court
161112609; A150572

314 P3d 345

David C. Force argued the cause and filed the briefs for appellants.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Crag Law Center and Christopher Winter filed the brief *amici curiae* for Beyond Toxics, Pesticide Action Network of North America and Neal Winter.

Sorenson Law Office and C. Peter Sorenson filed the brief *amici curiae* for Northwest Center for Alternatives to Pesticides and Organically Grown Company.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Plaintiffs are property owners who use only organic and sustainable farming and forestry practices. Some of their neighbors use pesticides and other chemicals that, plaintiffs allege, migrate onto their property and into their persons. In an earlier case, plaintiffs Hale and Wroncy filed an action against a neighbor alleging that the chemical intrusion was a trespass. *See Hale v. Klemp*, 220 Or App 27, 184 P3d 1185 (2008). The neighbor raised an affirmative defense based on ORS 30.930 to 30.947, commonly known as the "Right to Farm and Right to Forest Act" (the Act), which provides immunity to property owners who are sued for trespass or nuisance resulting from agricultural and forestry practices unless the practice is alleged to have caused death or serious injury.[1] Hale and Wroncy then voluntarily dismissed their action against the neighbor, pursuant to ORCP 54 A, but—based on the fact that their complaint had *alleged* trespass—they had to pay defendants' attorney fees. *See Hale*, 220 Or App at 34 (construing ORS 30.938[2]).

In this case, plaintiffs name the state as defendant and seek a declaratory judgment that the Act deprives them of a remedy in violation of the Remedy Clause in Article I, section 10, of the Oregon Constitution, which provides that, "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." On the state's motion under ORCP 21 A, the trial court dismissed the case with prejudice, determining that plaintiffs had not stated a justiciable controversy. Plaintiffs appeal. We affirm.

---

[1] The primary operative section of the Act, ORS 30.936, provides, in part,

"(1) No farming or forest practice on lands zoned for farm or forest use shall give rise to any private right of action or claim for relief based on nuisance or trespass.

"(2) Subsection (1) of this section shall not apply to a right of action or claim for relief for:

"(a) Damage to commercial agricultural products; or

"(b) Death or serious physical injury as defined in ORS 161.015."

[2] ORS 30.938 provides,

"In any action or claim for relief alleging nuisance or trespass and arising from a practice that is alleged by either party to be a farming or forest practice, the prevailing party shall be entitled to judgment for reasonable attorney fees and costs incurred at trial and on appeal."

On an appeal from a grant of a motion to dismiss, we assume the truth of all well-pleaded facts alleged in the complaint. *Doe v. Lake Oswego School District*, 353 Or 321, 297 P3d 1287 (2013). We review legal conclusions for errors of law. *Becker v. Pieper*, 176 Or App 635, 641, 32 P3d 912 (2001).

Plaintiffs allege that their property, crops, animals, and persons have suffered or will suffer injury caused by the drift of chemicals onto their properties from the surrounding properties. Further, plaintiffs believe that they are unable to pursue common-law remedies for their neighbors' alleged nuisance and trespass because, under the Act, generally accepted, reasonable, and prudent farm and forest practices are in most instances immune from liability for nuisance and trespass, and the availability of attorney fees acts as a deterrent. ORS 30.930(2), (4); ORS 30.936(1); ORS 30.938. They therefore brought this action against the state, seeking a declaration that the Act, by depriving them of a remedy, violates Article I, section 10. Without reaching the merits of plaintiffs' constitutional argument, the trial court concluded that plaintiffs had not alleged a justiciable controversy and granted the state's motion to dismiss on that basis. The court did not explain its reasoning orally or in writing.

On appeal, the state argues that the trial court's disposition was correct because a declaration that the Act is unconstitutional "could not affect the ability of plaintiffs' neighbors, who are not parties, to nonetheless invoke the Act's immunity provision in a future lawsuit." Plaintiffs, for their part, contend that their complaint alleges present facts—the existence of the Act and Article I, section 10—and that a judgment in their favor would have the effect of clarifying their "rights" under the "constitution [and] statute." ORS 28.020.[3] In particular, they assert that a declaration

---

[3] ORS 28.020 provides,

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

that the Act violates Article I, section 10, will clarify their right to seek relief from their neighbors.

The declaratory judgment statutes, ORS 28.010 to 28.160, have an uneasy relationship with the constitutional concept of justiciability. The statutes announce that their purpose "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and [they are] to be liberally construed and administered." ORS 28.120. "Declaratory judgment is preventive justice, designed to relieve parties of uncertainty by adjudicating their rights and duties *before wrongs have actually been committed." Beason v. Harcleroad,* 105 Or App 376, 380, 805 P2d 700 (1991) (emphasis added); *see also Recall Bennett Committee v. Bennett,* 196 Or 299, 322, 249 P2d 479 (1952) ("[T]he action for declaratory judgment 'is an instrumentality to be wielded in the interest of preventative justice[.]'" (Quoting *Cobb v. Harrington,* 144 Tex 360, 190 SW 2d 709 (1945) (quoting Anderson, *Declaratory Judgments* § 3 at 12).)). The statutory authority to issue declaratory judgments, however, is constrained by constitutional justiciability requirements.[4] The Supreme Court has held that the Uniform Declaratory Judgments Act does not give courts authority to issue declaratory rulings "in a vacuum; they must resolve an actual or justiciable controversy." *TVKO v. Howland,* 335 Or 527, 534, 73 P3d 905 (2003); *Brown v. Oregon State Bar,* 293 Or 446, 449, 648 P2d 1289 (1982). Courts cannot exercise jurisdiction over nonjusticiable controversies because a court cannot render advisory opinions. *Pendleton School Dist. v. State of Oregon,* 345 Or 596, 604, 200 P3d 133 (2009). Thus, if a claim for a declaratory judgment does not involve a justiciable controversy, a court does not have jurisdiction to consider it. *Hudson v. Feder,* 115 Or App 1, 5, 836 P2d 779, *rev den,* 314 Or 727 (1992). The tension is apparent between declaratory judgments, which are invoked "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal

---

[4] At least with respect to one aspect of justiciability—standing—the Supreme Court has held that there is no constitutional constraint on the legislature's authority to create justiciable controversies. *Kellas v. Department of Corrections,* 341 Or 471, 478, 145 P3d 139 (2006). *But see Yancy v. Shatzer,* 337 Or 345, 97 P3d 1161 (2004) (judicial power does not encompass moot cases).

relations," ORS 28.020, and justiciability requirements, which prohibit advisory opinions.

To accommodate the declaratory judgment statutes with the constitutional justiciability requirement, the Supreme Court and this court invoke the following language from *Brown*, 293 Or at 449:

> "In order for a court to entertain an action for declaratory relief, the complaint must present a justiciable controversy. Justiciability is a vague standard but entails several definite considerations. A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 408 P2d 80 (1965). The controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue. *Id.* A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. *Id.*"

*See also TVKO*, 335 Or at 534 ("To be justiciable, a controversy must involve a dispute based on present facts rather than on contingent or hypothetical events."); *Morgan v. Sisters School District #6*, 353 Or 189, 195-96, 301 P3d 419 (2013) (citing *TVKO*); *Poddar v. Clatsop County*, 167 Or App 162, 164-65, 2 P3d 929, *adh'd to on recons*, 168 Or App 556, 7 P3d 677, *rev den*, 331 Or 193 (2000) (citing *Brown*). The leading cases, then—despite a variety of considerations and outcomes—establish two irreducible requirements for justiciability: The dispute must involve present facts, and it must be a dispute in which a prevailing plaintiff can receive meaningful relief from a losing defendant.

Regarding the "present facts" requirement, the Supreme Court has held that, if the dispute involves the interpretation of an existing statute that could apply to a party in the future, that situation itself creates a present fact. For example, in *Pendleton School Dist.*, the plaintiffs sought a judgment declaring that the legislature had failed adequately to fund the school district, contrary to a newly enacted constitutional amendment. The state maintained that, especially with respect to future biennia, the case did not present a justiciable controversy. The court disagreed:

"The issue whether Article VIII, section 8, imposes a duty on the legislature to fund the public school system at a specified level every biennium presents a set of present facts regarding the interpretation of a constitutional provision; it is not simply an abstract inquiry about a possible future event. *See Savage* [*v. Munn*], 317 Or [283,] 292[, 856 P2d 298 (1993)] ('The workings of Measure 5 are "present facts," not simply possible future events.'); *Brown*, 293 Or at 450 ('present facts' were 'plaintiff's existing statutory duty' in particular factual context). *Compare Tillamook* [*Co. v. State Board of Forestry*], 302 Or [404,] 413[, 730 P2d 1214 (1986)] (matter not justiciable when parties sought declaratory judgment to prohibit speculative future legislation, as that would be advisory opinion)."

345 Or at 606. In a situation predating *Pendleton School Dist.*, this court reached a similar conclusion. In *Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 981 P2d 368 (1999), the plaintiffs challenged a local initiative imposing limits on the use of toxic substances and creating a Toxics Board to implement the limitation. Plaintiffs claimed (among other things) that the initiative conflicted with state law. *Id.* at 298. At the time of the challenge, the local initiative had never been enforced; in fact, the Toxics Board had not even promulgated implementing rules. *Id.* In rejecting the city's claim that the question was merely hypothetical and therefore not justiciable, we first observed, "A facial challenge to the validity of an enactment generally presents * * * a concrete controversy" and is therefore justiciable. *Id.* at 299. We went on to identify the issue as "whether the Initiative—independent of any future action by the Toxics Board—" conflicted with state law. We held, "That question is not hypothetical, and its answer requires no speculation as to future facts. Either the Initiative on its face conflicts with state law, or it does not." *Id.*

We are unable to discern a meaningful distinction between the present case and *Pendleton School Dist.* and *Advocates for Effective Regulation*. Indeed, the facts in this case are more compelling than the facts in those cases. In *Pendleton School Dist.*, the court held that an action *not yet taken* by the legislature—failure to appropriate sufficient funds *in future biennia* to meet constitutional requirements—created a present, concrete controversy. In

*Advocates for Effective Regulation*, the allegedly unlawful local action had not even been completely implemented. Here, the legislature has already acted and plaintiffs seek only a judgment declaring that the enactment is unconstitutional. Under *Pendleton School Dist.* and *Advocates for Effective Regulation*, the controversy between plaintiffs and the state involves "present facts."

Thus, the question here reduces to whether the court can provide plaintiffs "specific relief through a binding decree as opposed to an advisory opinion which is binding on no one." *Brown*, 293 Or at 449. As the state correctly points out, plaintiffs' neighbors are not parties to this case and are, for that reason, technically speaking, not bound by its outcome:

> "Because plaintiffs' neighbors are not parties to this case, a declaratory judgment against the state cannot bind them and will not provide plaintiffs with the relief they seek—the ability to sue their neighbors. In other words, even if plaintiffs obtained a judgment against the state declaring the Act unconstitutional, their neighbors could nonetheless raise the Act's [grant of] immunity in any future nuisance or trespass action that plaintiffs file. Because plaintiffs cannot obtain a meaningful judicial remedy *in this action*, the case is not justiciable."

(Emphasis added.) We are reluctant to attribute to the state the untenable position that a judicial decision declaring a statute to be unconstitutional has no effect on nonparties in the same jurisdiction, who would therefore remain at liberty to assert the unconstitutional statute and litigate its validity *de novo*. If that were the case, every public school in the country except those in Topeka, Kansas, would have remained free to engage in racial segregation until that particular school relitigated *Brown v. Board of Education*, 347 US 483, 74 S Ct 686, 98 L Ed 873 (1954). That is not the law. *See Cooper v. Aaron*, 358 US 1, 18, 78 S Ct 1401, 3 L Ed 2d 5 (1958) (decision in *Brown* binds nonparties such as Ohio officials). We presume, instead—because of the phrase "*in this action*"—that the state's argument is that a judgment in this case would not have an actual concrete impact on plaintiffs' rights *vis-à-vis* an allegedly trespassing or nuisance-producing neighbor until the occurrence of

hypothetical events that are *not* alleged. A declaration that the Act is unconstitutional would provide relief to plaintiffs only if (1) they continue to have the motive and means to bring an action in trespass or nuisance against a neighbor within the jurisdiction of the court that finally decides this action; (2) the hypothetical action is one that *would have conferred* immunity under the Act—that is, the hypothetical action involved a farm, farming practice, forestland, forest practice, and pesticide as those terms are defined in the Act, ORS 30.930[5] and did not claim death or serious physical injury, ORS 30.936(2)(b); and (3) the hypothetical action does not settle.[6] Mindful that "the difference between

---

[5] That statute provides,

"(1) 'Farm' means any facility, including the land, buildings, watercourses and appurtenances thereto, used in the commercial production of crops, nursery stock, livestock, poultry, livestock products, poultry products, vermiculture products or the propagation and raising of nursery stock.

"(2) 'Farming practice' means a mode of operation on a farm that:

"(a) Is or may be used on a farm of a similar nature;

"(b) Is a generally accepted, reasonable and prudent method for the operation of the farm to obtain a profit in money;

"(c) Is or may become a generally accepted, reasonable and prudent method in conjunction with farm use;

"(d) Complies with applicable laws; and

"(e) Is done in a reasonable and prudent manner.

"(3) 'Forestland' means land that is used for the growing and harvesting of forest tree species.

"(4) 'Forest practice' means a mode of operation on forestland that:

"(a) Is or may be used on forestland of similar nature;

"(b) Is a generally accepted, reasonable and prudent method of complying with ORS 527.610 to 527.770 and the rules adopted pursuant thereto;

"(c) Is or may become a generally accepted, reasonable and prudent method in conjunction with forestland;

"(d) Complies with applicable laws;

"(e) Is done in a reasonable and prudent manner; and

"(f) May include, but is not limited to, site preparation, timber harvest, slash disposal, road construction and maintenance, tree planting, precommercial thinning, release, fertilization, animal damage control and insect and disease control.

"(5) 'Pesticide' has the meaning given that term in ORS 634.006."

[6] There is no suggestion by plaintiffs that the circumstances that gave rise to the earlier action, which was voluntarily dismissed, somehow present a live controversy now. Rather, plaintiffs argue that the prospect of a *future* chemical drift presents a justiciable controversy.

a potential injury * * * and a speculative one * * * is not self-evident" and that "[s]orting one from the other is as much art as science," *Morgan v. Sisters School District #6*, 241 Or App 483, 494, 251 P3d 207 (2011), *aff'd*, 353 Or 189, 301 P3d 419 (2013), we nonetheless conclude that a judgment declaring the Act unconstitutional will have a concrete impact on plaintiffs in this case only if several contingencies occur. The connection is too speculative. We therefore affirm the judgment of the trial court.

Affirmed.