Argued and submitted March 18, affirmed August 19, 2009

Fred S. OLSON,
*Petitioner,*

*v.*

STATE MORTUARY AND CEMETERY BOARD,
*Respondent.*

State Mortuary and Cemetery Board
125514; A136781 (Control)

HOFSESS-OLSON, LLC,
dba Myrtle Creek Family Funeral Home,
*Petitioner,*

*v.*

STATE MORTUARY AND CEMETERY BOARD,
*Respondent.*

State Mortuary and Cemetery Board
125515; A136782

216 P3d 325

Charles F. Lee argued the cause for petitioners. With him on the briefs was Lee & Kaser PC.

Karla Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Rosenblum, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Petitioners Hofsess-Olson, LLC, dba Myrtle Creek Family Funeral Home, and Fred S. Olson, its manager and director, seek judicial review of an order of the State Mortuary and Cemetery Board determining that petitioners committed 88 violations of state and federal funeral service regulations, arising out of petitioners' pricing and billing practices. The board revoked petitioners' licenses and fined them $500 for each violation, for a total of $44,000. On review, petitioners advance eight different assignments of error, ranging from a challenge to the authority of the board to enforce federal funeral service regulations at all to arguments about the propriety of the board's interpretation and application of state and federal funeral service regulations in various particulars. We reject each of petitioners' assignments of error and affirm.

## I.  BACKGROUND

A.  *Regulatory Framework*

To understand the board's order and our resolution of the parties' contentions about it requires some background regarding the statutory and administrative framework for the regulation of funeral services.

The regulation of the funeral industry began as a purely state concern. The Oregon legislature created a State Mortuary and Cemetery Board, which was authorized to regulate the licensing and practice of embalming and funeral services, as provided in ORS chapter 692. Among other things, the legislature required licensees not to engage in misrepresentation in the conduct of business or in obtaining a license. ORS 692.180(1)(a). It also required licensees to refrain from engaging in fraudulent or dishonest conduct related to the operation of a funeral service practice, the operation of an embalming practice, or the operation of a cemetery or crematorium. ORS 692.180(1)(b). The legislature further authorized the board to investigate any complaint concerning a licensee and, if the board finds that the licensee violated any applicable industry standards, authorized the board to impose a civil penalty of not more than $1,000 per

violation, suspend or revoke the license, or refuse to grant or renew a license. ORS 692.180(1).

Meanwhile, the United States Congress enacted the Federal Trade Commission Act of 1982, 15 USC § 45 (1982), which prohibits "unfair or deceptive acts or practices," 15 USC § 45(a)(1), and directs the Federal Trade Commission (FTC) to make rules and regulations to prohibit such practices, 15 USC § 46(g). In response to that directive, in 1984, the FTC produced what has come to be known as "the Funeral Rule." 16 CFR § 453 (1984). The rule became effective in April 1984. It defines what acts constitute "unfair or deceptive acts or practices" in the context of the funeral services industry:

> "In selling or offering to sell funeral goods or funeral services to the public, it is an unfair or deceptive act or practice for a funeral provider to fail to furnish accurate price information disclosing the cost to the purchaser for each of the specific funeral goods and funeral services used in connection with the disposition of deceased human bodies, including at least the price of embalming, transportation of remains, use of facilities, caskets, outer burial containers, immediate burials, or direct cremations, to persons inquiring about the purchase of funerals."

16 CFR § 453.2(a). The FTC Funeral Rule also establishes "preventive requirements" designed to prevent a funeral provider from committing unfair or deceptive acts or practices. The rule declares that any funeral provider that complies with those preventive requirements is not engaged in unfair or deceptive acts or practices. *Id.* Among the preventive requirements listed in the rule are that providers give a "general price list" (GPL) specifying the goods and services to be provided and the prices for each:

> "Preventive requirements. To prevent these unfair or deceptive acts or practices * * *, funeral providers must:
>
> "* * * * *
>
> "(4)   General price list
>
> "(i)(A)   Give a printed or typewritten price list for retention to persons who inquire in person about the funeral goods, funeral services or prices of funeral goods or

services offered by the funeral provider. The funeral provider must give the list upon beginning discussion of any of the following:

"(1) The prices of funeral goods or funeral services;

"(2) The overall type of funeral service or disposition; or

"(3) Specific funeral goods or funeral services offered by the funeral provider.

"* * * * *

"(5) Statement of funeral goods and services selected.

"(i) Give an itemized written statement for retention to each person who arranges a funeral or other disposition of human remains, at the conclusion of the discussion of arrangements. The statement must list at least the following information:

"(A) The funeral goods and funeral services selected by that person and the prices to be paid for each of them;

"(B) Specifically itemized cash advance items * * *; and

"(C) The total cost of the goods and services selected.

"(ii) The information required by this paragraph (b)(5) may be included on any contract, statement, or other document which the funeral provider would otherwise provide at the conclusion of discussion of arrangements.

"(6) Other pricing methods. Funeral providers may give persons any other price information, in any other format, in addition to that required by § 453.2(b)(2), (3), and (4) so long as the statement required by § 453.2(b)(5) is given when required by the rule."

16 CFR § 453.2(b). In addition, the FTC Funeral Rule provides that certain practices constitute "deceptive acts or practices":

"In selling or offering to sell funeral goods or funeral services to the public, it is a deceptive act or practice for funeral providers to represent that federal, state, or local laws, or particular cemeteries or crematories, require the purchase of any funeral goods or funeral services when such is not the case."

16 CFR § 453.3(d)(1). And the rule further provides a series of preventive requirements detailing what funeral providers must do to prevent such deceptive acts or practices:

"To prevent these deceptive acts or practices, as well as the deceptive acts or practices identified in §§ 453.3(a)(1), 453.3(b)(1), and 453.3(c)(1), funeral providers must identify and briefly describe in writing on the statement of funeral goods and services selected (required by § 453.2(b)(5)) any legal, cemetery, or crematory requirement which the funeral provider represents to persons as compelling the purchase of funeral goods or funeral services for the funeral which that person is arranging."

16 CFR § 453.3(d)(2).

In response to the FTC Funeral Rule, in 1985, the Oregon legislature adopted amendments to ORS 692.180 specifying that "[v]iolation of * * * regulations adopted by the Federal Trade Commission regulating funeral industry practices" constitutes an additional cause for disciplinary action by the State Mortuary and Cemetery Board against its licensees. ORS 692.180(1)(h).

Meanwhile, the board adopted administrative rules to implement both the state and federal statutes governing the "Death Care Industry." As pertinent to this case, those rules provide:

"Every licensee or agent of a licensed facility of the Oregon State Mortuary and Cemetery Board (Board) shall abide by the accepted standards of the Death Care Industry and the minimum standards, including but not limited to the following standards of practice set forth by the Board. Violations of the following may be cause for Board action.

"(1) Required conduct related to safety and integrity:

"(a) Compliance with Oregon Revised Statutes relating to death care;

"(b) Compliance with Oregon Public Health Laws;

"(c) Compliance with FTC Funeral Rule;

"* * * * *

"(2) Conduct unacceptable under the Board's 'Standards of Practice.'

"* * * * *

"(b)   Conduct related to communication and record keeping:

"* * * * *

"(C)   Altering a funeral service, cemetery or crematory record; including but not limited to, changing words/letters/ numbers from the original document to mislead the reader of the record[.]"

OAR 830-030-0090. In a similar vein, the board adopted rules requiring licensees to preserve records for its review:

"(6)   All licensees, licensed facilities and funeral service practitioners shall keep a detailed, accurate, and permanent record of all transactions that are performed for the care and preparation and final disposition of human remains. The record shall set forth as a minimum:

"(a)   Name of decedent and the identifying metal disc number provided by Vital Statistics;

"(b)   Date of death;

"(c)   Name of purchaser of professional services and relationship;

"(d)   Name of place wherein remains are to be interred or cremated (in cemetery records the exact location of the interment of remains by crypt, niche, or by grave, lot and plot);

"(e)   The name of the funeral service practitioner or cemetery or crematory personnel responsible for making the arrangements;

"(f)   The name of the embalmer responsible for embalming (does not apply to cemetery or crematorium records); and

"(g)   Written documentation of permission to embalm or cremate human remains is required from the person who has the right to control disposition of the remains pursuant to ORS 97.130(1) and (2). The record of such authorization shall be made to include as a minimum: The name of the authorizing individual and relationship to the deceased, date and time contacted, phone number and name of the licensee or funeral home representative acquiring the

authorization (does not apply to cemetery or crematorium records).

"* * * * *

"(9)   No funeral establishment operator, immediate disposition company operator, cemetery authority or crematory authority shall:

"(a)   Fail to preserve permanent records for inspection by the Board; or

"(b)   Alter, cancel or obliterate entries in permanent records for the purpose of falsifying any record required by this chapter to be made, maintained or preserved."

OAR 830-040-0000.

B.   *Facts*

We take the facts from the board's findings, which petitioners do not challenge. Olson is a licensed funeral service practitioner. Myrtle Creek is licensed to operate a funeral establishment, and Olson is its manager and part owner. Since beginning its operations in 1999, Myrtle Creek has maintained GPLs, which list prices for commonly provided goods and services. The GPLs have been updated several times over the years. One of Olson's co-owners prepared the list for 1999, and Olson created the lists for the years through 2003.

Those GPLs listed prices for basic professional services of funeral director and staff; vehicle transfer from place of death; additional per mile cost for vehicle transfer from place of death; services vehicle; container for cremation and temporary container; graveside service only; memorial service with no casket present; funeral service; viewing or visitation; cremation process; shipping of cremated remains with shipping container; "direct cremation" with container provided by purchaser; and direct cremation with container provided by funeral home. "Direct cremation" is a "package" that includes basic care and handling of remains, the cremation process, removal from the place of death within a 50-mile radius, a temporary cardboard container for the cremated remains, and other specific goods and services.

In addition to goods and services provided directly by the funeral home, Myrtle Creek also advanced funds to customers for certain goods and services, such as obituaries and death certificate filing fees. Myrtle Creek passed those costs on to the consumer, designating them as cash advances.

When a customer came to Myrtle Creek for services, Olson gave the customer the GPL if the customer requested a price list. At the time services were arranged, Olson frequently—but not always—listed the requested services on a Statement of Funeral Goods and Services Selected (SFGSS), a form used to describe the goods and services provided by the funeral home and the amount being charged. Olson had the customer sign the SFGSS. About 15 percent of the time, Olson had the customer sign the SFGSS *before* the prices were listed on it.

On one occasion, a Myrtle Creek customer, Smith, and her daughter, Dickey, met with Olson to arrange for cremation of Smith's deceased husband. Olson listed a charge of $875 for "direct cremation" on the SFGSS. With the addition of other items, including some cash advances, the SFGSS total was $1,094. Smith signed the SFGSS, but Olson failed to give her a completed copy when he entered into the agreement for services with her. Before submitting Smith's bill to the Veterans Administration (VA) for payment of benefits, Olson added a charge of $250 for the cremation process and another charge of $250 for transportation of remains, even though both of those services were already included in the "direct cremation" charge. Moreover, $250 was in excess of the amount authorized by the GPL. Olson crossed out the total of $1,094 and changed it to $1,594. Olson did not show the additional charges to Smith.

The VA sent Smith a copy of the SFGSS that Olson had submitted to it, and Smith noticed the additional charges and complained to the board about them. Subsequently, after the VA's payment of $550, Olson sent Smith dunning letters on two separate occasions requesting payment of the balance owing, which he represented to be $1,044.

Smith's daughter, Dickey, contacted the board and complained about Olson adding charges to the SFGSS. In response to the complaint, the board's compliance manager,

Nelson, inspected Myrtle Creek's records. She noted that Smith's file had been altered with correction fluid in several respects, and at that time it reflected a payment by the VA and a balance owed by Smith of $794.

During Nelson's inspection of petitioners' records, she came across documents concerning the provision of cremation and related goods and services for a customer by the name of Rider. The SFGSS regarding Rider that was submitted to the VA for reimbursement included a $625 charge for basic services, a $320 charge for transfer of remains to the funeral home, $125 for refrigeration, $300 for cremation, and $20 for a black plastic urn, for a total of $1,390 before cash advances were added. When Nelson later asked for additional documents from petitioners, however, petitioners presented her with a different document than the one that had been submitted to the VA, one that did not list itemized charges and instead billed a total of only $870.

The investigation ultimately led to the discovery of possible numerous violations, including many incidents in which petitioners charged customers separately for each service, rather than the lower, "direct cremation" package price listed on the GPL for the same services, resulting in a higher cost to the customer. The investigation also revealed many incidents in which petitioners charged customers more for services than the prices stated on the applicable GPL. The overcharges ranged from $35 to $150 per customer.

In addition, there were four incidents in which petitioners billed customers twice for the cremation process and a cremation tray, once in the "direct cremation" package charge, and again separately. Petitioners also charged more for the additional cremation process than was listed on the applicable GPL.

Finally, the investigation revealed one incident in which petitioners charged a customer $75 for a cremation tray, with the notation on the SFGSS that the service was "Required by State," although a cremation tray was not required by state law.

Following the investigation, the board sent petitioners notices of proposed disciplinary action, charging numerous violations of the federal and state regulations of the funeral services industry. The matters were later consolidated into a single proceeding. Following a hearing, the board issued an order finding the foregoing facts. On the basis of those facts, the board further concluded that petitioners had committed 88 violations. Specifically, the board concluded that (1) petitioners failed to give Smith a completed copy of the SFGSS in violation of the FTC Funeral Rule requirement that customers be given itemized written statements for services to be provided, 16 CFR § 453.2; (2) petitioners misrepresented the charges for the Smith cremation when they billed the VA more than the actual charge, in violation of ORS 692.180(1)(a), prohibiting misrepresentations; (3) petitioners double-billed the VA for the Smith cremation process work, in violation of the same law; (4) petitioners also double-billed for the transfer of Smith's remains, in violation of the same law; (5) petitioners twice dunned Smith for a greater amount than earlier had been agreed, in violation of the misrepresentation prohibition in ORS 692.180(1)(a) and the fraudulent or dishonest conduct prohibition in ORS 692.180(1)(b); (6) petitioners altered records in the Smith transaction, in violation of OAR 830-030-0090(2)(b)(C) and OAR 830-040-0000(9)(b); (7) petitioners charged for providing a cremation tray, supposedly because it was "Required by State," when the state imposed no such requirement, in violation of both the false statement prohibitions in the FTC Funeral Rule, 16 CFR § 453.3(d)(1), and the similar prohibitions in ORS 692.180(1)(a) and (b); (8) petitioners double-charged for cremation trays and cremation processes on eight different occasions, in violation of ORS 692.180(1)(a) and (b); (9) petitioners, on 34 different occasions, charged more for other goods and services than the GPLs provided, in violation of ORS 692.180(1)(a) and (b); (10) petitioners, on 37 occasions, improperly itemized charges to customers for goods and services at a higher cost than the GPL price, in that they charged for services that were already part of the direct cremation package, in violation of ORS 692.180(1)(a) and (b); and (11) petitioners altered records regarding the Rider transaction, in violation of ORS 692.180(1)(b) and (g). For the

88 violations that the board concluded petitioners had committed, the board assessed a civil penalty of $44,000 ($500 per violation) and also revoked petitioners' licenses.

## II. ANALYSIS

In their petition for judicial review, petitioners assert eight assignments of error. The assignments range from challenging the authority of the board to enforce the FTC Funeral Rule to the board's supposed errors in interpreting that rule, as well as the state statutes and regulations pertaining to the regulation of the funeral services industry. We address each assignment in turn, although—for reasons of readability and coherence—we address them in a slightly different order from the one that petitioners offer in their brief.

A. *Second Assignment: Board Authority to Enforce the FTC Funeral Rule*

■ As we have noted, the board concluded that, in two instances, petitioners violated the FTC Funeral Rule—by failing to give Smith a completed copy of the SFGSS and by falsely stating that a cremation tray was required by state law. In their second assignment of error, petitioners contest those two violations on the ground that the board erred in "assuming to itself the authority to enforce and interpret federal law." According to petitioners, neither the Oregon legislature nor the board has adopted the FTC Funeral Rule as state law. In petitioners' view, that means that the board lacks authority to enforce the rule. The board responds that the legislature expressly provided that violation of the FTC Funeral Rule constitutes a violation of ORS 692.180. The board is correct.

As we have noted, in 1984, the FTC adopted its Funeral Rule. In response to the adoption of that rule, in 1985, the Oregon legislature amended ORS 692.180(1)(h) to provide that "[v]iolation of * * * regulations adopted by the Federal Trade Commission regulating funeral industry practice" constitutes a violation of state law. In addition, OAR 830-030-0090(1)(c) expressly provides that every licensee of the board is required to comply with the requirements of the

FTC Funeral Rule and that violations of the rule "may be cause for board action." To avoid the potential constitutional problem of "prospective delegation," we interpret the 1985 amendment and its implementing rules to refer to the FTC Funeral Rule as it was then written and not as an attempt to adopt rules that will change from time to time as the federal government changes its rules. *See Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 311, 981 P2d 368 (1999) ("A state statute, for example, cannot incorporate future federal regulations not yet promulgated at the time of enactment; the effect of doing so is to delegate the power to amend the statute to the federal regulatory authority.").

It is clear that, under the applicable statutes and administrative rules, when the board takes a licensee to task for violating the FTC Funeral Rule, the board is enforcing state law. We reject petitioners' second assignment of error.

## B. *Third Assignment: Price List and Statement Requirements*

■ The board concluded that petitioners violated the FTC Funeral Rule and, in consequence, ORS 692.180(1)(h), by failing to provide one of their customers, Smith, with an SFGSS, that is, a statement of goods and services to be provided. In their third assignment, petitioners argue that, even assuming that the board can enforce the FTC Funeral Rule, the board misinterpreted that rule in holding that it requires funeral services providers to supply customers with a GPL and an SFGSS. According to petitioners, the FTC Funeral Rule merely sets out a "safe harbor," stating that, if a provider chooses to supply customers with a GPL and an SFGSS, the provider will have complied with the law. In petitioners' view, the federal rule permits providers to negotiate freely with individual customers to reach a price that accommodates their needs, irrespective of the existence of any GPL that the licensee may have created for its own purposes.

As we have noted, the FTC Funeral Rule begins by defining what constitute unfair or deceptive acts or practices, 16 CFR § 453.2(a), and then describes various "preventive requirements," 16 CFR § 453.2(b). The rule does state that "[a]ny funeral provider who complies with the preventive

requirements * * * is not engaged in the unfair or deceptive acts or practices defined here." 16 CFR § 453.2(a).

It is on that last statement that petitioners rely for their contention that the "preventive requirements" are not really requirements, but rather, a "safe harbor." If that statement were all that the FTC Funeral Rule provided, petitioner might have a point. From a strictly logical perspective, merely because compliance with a regulatory provision establishes that the law has *not* been violated does not mean that a failure to comply with that provision necessarily means that the law *has* been violated. (Such an argument would suffer from the logical fallacy of denying the antecedent.)

The flaw in petitioners' argument, however, is that the FTC Funeral Rule says more than that. First, the "preventive requirements" are just that—*requirements*, not suggestions. Second, and more important, the rule provides that, "[t]o prevent these unfair or deceptive acts or practices[,] * * * funeral providers *must*," among other things, supply a "general price list," 16 CFR § 453.2(b)(4), and a "statement of funeral goods and services selected," 16 CFR § 453.2(b)(5). (Emphasis added.) Third, confirming the mandatory nature of the "preventive requirements" is the fact that the FTC Funeral Rule provides that funeral providers may give customers "price information in any other format," but only "*in addition to that required by § 453.2(b)(2), (3), and (4) so long as the statement required by § 453.2(b)(5) is given when required by the rule.*" 16 CFR § 453.2(6) (emphasis added). Thus, the rule leaves no doubt that the requirements to provide a price list and billing statement are mandatory and that the failure to do so constitutes a violation. Petitioners' arguments to the contrary cannot be reconciled with the wording of the FTC Funeral Rule. We therefore reject their third assignment of error.

C. *First Assignment:   The Mandatory Nature of GPLs*

In their first assignment of error, petitioners contend that the board erred in determining that, when they (1) double-charged for cremation services, (2) charged more for goods and services than the GPL prices for those goods

and services on 34 occasions, and (3) charged more for direct cremation services than the GPL prices for those services on 37 occasions, petitioners engaged in misrepresentation or dishonesty in violation of ORS 692.180(1)(a) and (b). The board, petitioners contend, erroneously "appears to have assumed that the funeral services provided * * * were subject to a regulated price structure." To the contrary, they argue, the applicable regulations require no more than the provision of a GPL upon a customer's request. If a customer requests the GPL, petitioners contend, then it may serve as the basis for discussions about prices for goods and services. But nothing in the applicable rules, petitioners insist, requires that the charges conform to those listed on the GPLs.

Petitioners' argument in support of this assignment of error is a variation of the argument concerning the SFGSSs that we just rejected. It is predicated on the notion that the reference in the FTC Funeral Rule to providing GPLs to customers is part of a "safe harbor" and is not actually a requirement of funeral service providers. As we have noted, however, that is a view that cannot be squared with the explicitly mandatory nature of the FTC Funeral Rule. We reject the first assignment of error without further discussion.

D. *Fourth Assignment: Overcharging the VA*

The board found that, on three occasions, petitioners submitted statements to the VA that showed charges in excess of those on the applicable GPLs and invoices given to customers, in violation of ORS 692.180(1)(a) and (b). Petitioners, in their fourth assignment of error, contend that the board erred. The precise nature of the error is not clear to us. Petitioners assert that they simply did what was "necessary to qualify the customer for the Veterans Administration benefit, and both the customer and the Veterans Administration wanted the deceased veteran to get the benefit he was due." The fact that the statements sent to the VA were in excess of the statements shown to the customers for the same services, in petitioners' view, is beside the point.

The argument thus appears to rest on the same assumption that supplies the underpinning of the previous assignments—namely, that funeral services providers are

free to charge for their goods and services at rates that may vary from customer to customer and without regard to what is stated in the GPLs and SFGSSs. As we have already concluded, that assumption is incorrect. We reject the fourth assignment without further discussion.

E.  *Fifth Assignment:  Dunning Letters*

The board found that, on two occasions, petitioners sent dunning letters to a customer demanding payment in an amount larger than what had previously been agreed. Petitioners argue that there are "mitigating factors," including that the customers "never paid a dime for the services" and the fact that there is no evidence that they would actually "have accepted more than they were due if the billing letters had produced fruit." Moreover, they contend, the matter should be remanded to the board for reconsideration of the penalty imposed for those violations, should this court determine that the board erred in finding other violations.

There appears to us to be no cognizable basis for reversing on this assignment of error. Petitioners do not challenge the board's findings for want of evidence. Nor do they assert that the violations that the board found were erroneous as a matter of law. Petitioners instead appear to ask us to reweigh the evidence to take into account certain "mitigating factors." That is the board's job, however, not ours. We reject the assignment without further discussion.

F.  *Sixth Assignment:  Alteration of Records*

■    In their sixth assignment of error, petitioners contend that the board erred in determining that they violated OAR 830-030-0090(2)(b)(C) and OAR 830-040-0000(9)(b) when they altered invoices in their records. OAR 830-030-0090(2)(b)(C) prohibits "altering a funeral service, cemetery or crematory record; including but not limited to, changing words/letters/numbers from the original document to mislead the reader of the record." OAR 830-040-0000(9)(b) prohibits a funeral establishment from "[a]lter[ing], cancel[ing] or obliterat[ing] entries in permanent records for the purpose of falsifying any record required by this chapter to be made, maintained or preserved." OAR 830-040-0000(6) states that

"[a]ll licensees * * * shall keep a detailed, accurate, and permanent record of all transactions that are performed for the care and preparation and final disposition of human remains." The rule then describes what shall be included in the record, "as a minimum," and lists such information as the name of the decedent, the date of death, the purchaser of services, the place where the remains are to be interred, the name of the embalmer, and documentation of permission to embalm or cremate.

Petitioners contend that, because that list does not expressly refer to financial arrangements between the licensee and the customer, there is no requirement that such information be kept as a part of the permanent record and that the SFGSS is not a "funeral service, cemetery or crematory record." Accordingly, in petitioners' view, altering the SFGSS does not constitute a violation of OAR 830-030-0090(2)(b)(C) or OAR 830-040-0000(9)(b).

Petitioners overlook the fact that, although billing statements are not expressly listed in OAR 830-040-0000(6) among the minimum requirements for the record, the list does not *preclude* other items from being a part of the "permanent record of all transactions" performed for the care and preparation and final disposition of human remains. The SFGSSs that petitioners maintained for each customer were kept as a part of their record and clearly were part of the "funeral service, cemetery or crematory record" that licensees were prohibited from altering by both OAR 830-030-0090(2)(b)(C) and OAR 830-040-0000(9)(b). The board did not err in determining that petitioners' conduct in altering the SFGSSs prior to sending them to the VA and prior to the compliance officer's inspection violated those rules.

G.  *Seventh Assignment:  Cremation Trays*

In their seventh assignment of error, petitioners contend that the board erred in determining that they violated the FTC Funeral Rule when they noted on one customer's SFGSS that a cremation tray was "Required by State." The rule provides that

"it is a deceptive act or practice for funeral providers to represent that federal, state, or local laws, or particular cemeteries or crematories, require the purchase of any funeral goods or funeral services when such is not the case."

16 CFR § 453.3(d)(1). Petitioners contend that cremation trays *are* in fact required by state law under OAR 830-030-0000(3) and (5), and OAR 830-030-0040(5). Petitioners reason: "It is easy to imagine the sanitary and other complications that would result if bodies were cremated without being in some sort of container."

Although the cited rules refer to cremation containers or trays, contrary to petitioners' suggestion, they are apparently not used during the cremation process itself, but rather for holding the remains before and after cremation. *See* OAR 830-030-0040(5) (requiring removal of metal disc from cremation container prior to cremation and placement of metal disc in cremation chamber); OAR 830-030-0050 (after cremation, all residue of the cremation process shall be removed from the cremation chamber and placed within a container or tray "that will ensure against co-mingling with other cremated remains"). Contrary to petitioners' contention, there is no state law requiring that the customer purchase a cremation tray.

H. *Eighth Assignment: Penalties*

In their eighth and final assignment of error, petitioners contend that the board erred in imposing a $500 fine for each violation and revoking the licenses of each petitioner. ORS 692.180(1) provides, in part:

"If the board finds any of the causes described in this section in regard to any person, licensee or applicant or the holder of a certificate of authority, *the board may impose a civil penalty of not more than $1,000 for each violation, suspend or revoke a license to practice* or to operate under this chapter or refuse to grant or renew a license."

(Emphasis added.) The imposition and choice of penalty for violation of laws governing funeral service providers and funeral homes is a matter within the board's discretion. Petitioners identify no basis for asserting that, in imposing a $500 fine for each violation and revoking their licenses, the

board abused its discretion. We conclude, accordingly, that the board did not err. *See* ORS 183.482(8)(b)(A).

Affirmed.