Argued and submitted February 17, 2021, affirmed February 9, petition for
review denied July 7, 2022 (370 Or 56)

Richard E. RUDDER
and Wendy L. Rudder,
*Plaintiffs-Respondents,*

*v.*

William D. HOSACK
and Kathleen A. Hosack,
*Defendants-Appellants.*

Coos County Circuit Court
18CV40601; A171925

506 P3d 1156

Plaintiffs, who bought a residential real property from defendants, sued to obtain a judicial declaration holding defendants liable for remedial action costs resulting from an underground leaking oil tank. On appeal, defendants challenge the trial court's judgment declaring them strictly liable for all remedial action costs attributable to or associated with the oil tank under ORS 465.255(1)(a), the court's grant of a directed verdict to plaintiffs on defendants' breach of contract counterclaim, and a supplemental judgment awarding attorney fees and costs to plaintiffs under the contract. *Held*: Based on the jury's findings, the trial court did not err in declaring defendants as the only statutorily liable parties under ORS 465.255(1)(a). Although any potentially liable person may bring a claim for contribution under ORS 465.257, the court could assign responsibility only to a party found to be liable under ORS 465.255. Therefore, the court did not err in allocating all liability to defendants. Further, the trial court did not err in granting a directed verdict on defendants' breach of contract counterclaim because the contract terms were unambiguous and did not support defendants' assertion that plaintiffs agreed to not file a lawsuit against defendants. Relatedly, ORS 465.255(5)(a) was inapplicable in the instant case because defendants did not have an "agreement to insure, hold harmless or indemnify" them with respect to the oil tank. Finally, because the court did not err in directing a verdict on defendants' breach of contract counterclaim, defendants' challenge to the supplemental judgment awarding plaintiffs' attorney fees and costs on that counterclaim necessarily failed.

Affirmed.

Martin E. Stone, Judge.

Katie Jo Johnson argued the cause for appellants. Also on the briefs were J. Kurt Kraemer and McEwen Gisvold LLP.

Carson Bowler argued the cause for respondents. Also on the brief were Jessica A. Schuh, Alex Bish, and Schwabe, Williamson & Wyatt, P.C.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Affirmed.

**JAMES, P. J.**

This case concerns liability for a leaking oil tank on residential property. Plaintiffs, who bought the property from defendants, sued to obtain a judicial declaration holding defendants strictly liable for remedial action costs under ORS 465.255. That statute provides, in relevant part:

"(1)  The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility and for damages for injury to or destruction of any natural resources caused by a release:

"(a)  Any owner or operator at or during the time of the acts or omissions that resulted in the release.

"(b)  Any owner or operator who became the owner or operator after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator."

We conclude that the trial court did not err in declaring defendants liable under ORS 465.255(1)(a) and allocating 100 percent liability for remedial action costs attributable to, or associated with, the underground heating oil tank to defendants. Accordingly, we affirm.

## I.  BACKGROUND

Defendants owned a residential property located in Coos Bay, Oregon, from 1975 to 2013. During that time period, defendants used an underground heating oil tank until 2006 when they converted to natural gas. After defendants stopped using the tank, they drained the majority of the heating oil out of the tank using a professional fuel pump.

In 2013, plaintiffs purchased the property from defendants. Before closing, defendants told plaintiffs that there was a heating oil tank on the property. Plaintiffs waived their right to inspect the tank. The parties documented the sale of the property with a Real Estate Sales

Agreement. As relevant to this appeal, the agreement contains an "as-is" clause, which provides:

> "Except for Seller's express written agreements and written representations contained herein, and Seller's Property Disclosure, if any, Buyer is purchasing the Property 'AS-IS,' in its present condition and with all defects apparent or not apparent. This provision shall not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon law."

(Uppercase in original.) The agreement also includes an Addendum E, which provides:

> "Buyer releases all contingencies in regards to this sale, including the inspections in general and specifically the presence of an underground oil tank."

Following the sale, plaintiffs lived at the property for about three years. In 2016, a release of heating oil was discovered. The initial investigation conducted by plaintiffs revealed significant heating oil contamination in the soil and groundwater. The Oregon Department of Environmental Quality (DEQ) sent both plaintiffs and defendants letters informing them of their potential duties to clean up the oil release.

Plaintiffs and defendants could not agree on their respective responsibilities for the cleanup cost. Plaintiffs then filed suit, seeking declaratory relief to hold defendants strictly liable for remedial action costs respecting the contamination under ORS 465.255(1)(a) on the ground that defendants were the owners of the property at the time of the release. Defendants denied liability, contending that plaintiffs were the parties who were liable under the statute and responsible for all remedial action costs. Defendants raised two counterclaims, seeking contribution for remedial action costs from plaintiffs under ORS 465.257, and alleging that plaintiffs breached the sales agreement by bringing the lawsuit because the as-is clause and Addendum E of the agreement constituted a promise by plaintiffs to not hold defendants responsible for any environmental liabilities caused by the oil tank.

Plaintiffs waived their right to a jury, but defendants requested a jury to make factual findings necessary

to support the court's liability determinations under ORS 465.255. Following a two-day jury trial, the court first granted plaintiffs' motion for a directed verdict on defendants' breach of contract counterclaim. After being instructed by the court on the remaining claims, the jury deliberated and returned a verdict. On plaintiffs' claim for declaratory relief, the jury found: (1) heating oil was released from the underground storage tank on the property during the period defendants owned the property (1975 to 2013); and (2) no release of oil occurred during the time that plaintiffs owned the property (2013 to 2016). Thereafter, the court concluded, as a matter of law, that neither the as-is clause nor Addendum E in the parties' real estate sales agreement is an agreement to insure, hold harmless, or indemnify defendants for environmental strict liability under ORS 465.255.

Based on the jury's factual findings and the court's conclusions of law, the court entered a declaratory judgment declaring defendants were strictly liable under ORS 465.255 for remedial action costs attributable to or associated with the underground oil tank. On defendants' counterclaim for contribution, declaratory judgment was entered in favor of plaintiffs that, as between plaintiffs and defendants, defendants were the only parties responsible for remedial action costs. Subsequently, based on the court's directed verdict on defendants' breach of contract counterclaim, the court entered a supplemental judgment awarding attorney fees and costs to plaintiffs.

Defendants appeal, raising five assignments of error. Defendants contend that the trial court erred in (1) concluding plaintiffs' claim for declaratory relief was justiciable and declaring that defendants were strictly liable under ORS 465.255(1)(a); (2) determining that neither the as-is clause nor Addendum E constituted "an agreement to insure, hold harmless or indemnify" defendants from liability under ORS 465.255(5); (3) failing to evaluate ORS 465.257 with respect to defendants' counterclaim for contribution; (4) granting a directed verdict on defendants' breach of contract counterclaim; and (5) awarding plaintiffs' attorney fees and costs under the contract. We consider each of the assignments in turn.

## II. ANALYSIS

### A. *Justiciable Controversy*

Plaintiffs brought a declaratory judgment action, seeking a judicial declaration under the Declaratory Judgments Act, ORS 28.010 to 28.160, that defendants were strictly liable for any remedial action costs arising from cleaning up the heating oil contamination associated with the property. On appeal, defendants argue that plaintiffs' claim is not justiciable because the full amount of remedial action costs have not yet been incurred. The issue regarding justiciability of the parties' dispute is a challenge to the trial court's subject matter jurisdiction. *Beck v. City of Portland*, 202 Or App 360, 368, 122 P3d 131 (2005). We review legal conclusions regarding jurisdiction for errors of law. *Hill v. City of Portland,* 296 Or App 470, 475, 439 P3d 564 (2019).

Under the Uniform Declaratory Judgments Act, courts "have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." ORS 28.010. The courts' authority to issue declaratory judgments, however, is constrained by statutory justiciability requirements. ORS 28.020 provides:

"Any person *** whose rights, status or other legal relations are affected by a *** statute, *** may have determined any question of construction or validity arising under any such *** statute, *** and obtain a declaration of rights, status or other legal relations thereunder."

The Oregon Supreme Court has held that a controversy is only justiciable when there is an actual and substantial controversy between parties having adverse legal interests. *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 111, 408 P2d 80 (1965). Specifically, there are "two irreducible requirements" to establish justiciability: (1) the dispute must involve "present facts" as opposed to a dispute which is based on future events of a hypothetical issue; and (2) a prevailing plaintiff can receive "meaningful relief" from a losing defendant through a binding decree as opposed to an advisory opinion. *Hale v. State of Oregon*, 259 Or App 379, 384, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014).

When a dispute "involves the interpretation of an existing statute that could apply to a party in the future, that situation itself creates a present fact." *Hale*, 259 Or App at 384. The Oregon Hazardous Waste and Hazardous Materials Act, ORS chapter 465, imposes strict liability on certain owners or operators for remedial action costs incurred by a release of hazardous waste. Specifically, ORS 465.255(1) provides:

> "The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility and for damages for injury to or destruction of any natural resources caused by a release:
>
> "(a)  Any owner or operator at or during the time of the acts or omissions that resulted in the release.
>
> "(b)  Any owner or operator who became the owner or operator after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator."

Here, the initial investigation conducted by plaintiffs revealed that significant groundwater and soil contamination was released from the heating oil tank, on and around the property. DEQ[1] considered the property to be a high priority based on the large area impacted and the high concentrations of pollutants in groundwater and demanded remedial actions at the property. It issued a letter to plaintiffs identifying them as responsible parties who are required to clean up the heating oil release. Under such circumstance, plaintiffs' legal rights are affected by the court's interpretation of the strict liability statute as to whether plaintiffs are indeed responsible parties under ORS 465.255. In short, plaintiffs sufficiently alleged an actual dispute based on present facts.

We next turn to the "meaningful relief" requirement. The Supreme Court explained in *Cummings Constr.*, that there must be "a real and substantial controversy

---

[1] Under ORS 465.260(4), DEQ may order a person liable for environmental harm "to conduct any removal or remedial action or related actions necessary to protect the public health, safety, welfare and the environment."

admitting of specific relief through a decree of conclusive character." 242 Or at 110 (internal quotation marks omitted). Otherwise, the court's decision will amount to no more than an advisory opinion. *Id.* Here, the declaratory judgment plaintiffs sought would (and did) provide meaningful relief. The trial court concluded that "future remedial costs would continue to be incurred after DEQ completed its site inspection and analysis." At trial, plaintiffs and defendants could not agree on their respective responsibilities with regard to the cleanup costs. Without declaratory relief, plaintiffs were obligated to conduct any remedial action necessary to clean up the environmental contamination. Here, a declaratory judgment in favor of plaintiffs, concluding defendants are the only liable parties under the statute, stood to relieve plaintiffs of cleanup costs. The trial court's liability declaration placed the costs on those who ought to be responsible under the statute without having an innocent party have to bear the financial burden in advance. For the reasons above, we conclude that plaintiffs' declaratory relief claim is justiciable because there is an actual and substantial controversy between parties having adverse legal interests. *Cummings Constr.*, 242 Or at 111. The trial court did not err in concluding that it had subject matter jurisdiction over this case. Any dispute as to whether defendants should be responsible for any remedial action costs goes to the merits, not justiciability.

B.   *Defendants' Statutory Liability under ORS 465.255(1)(a)*

Having concluded that a claim for declaratory relief was an appropriate mechanism to determine defendants' liability for the heating oil release, we next turn to whether the trial court erred in concluding that defendants were statutorily liable under ORS 465.255. On appeal, defendants contend that the plain language of ORS 465.255(1)(a) requires proof that remedial action costs have already been incurred before liability can be determined, even in a declaratory judgment proceeding.[2] Our standard of review for a declaratory judgment proceeding depends on the underlying

---

[2] We do not address defendants' other argument that the evidence presented to the trial court was insufficient to support the trial court's liability determination because it was not presented to the trial court and is therefore unpreserved.

nature of the claim and issues presented on appeal. *Harris v. Warren Family Properties, LLC*, 207 Or App 732, 737, 143 P3d 548 (2006). We review whether the trial court erred in concluding defendants were liable under ORS 465.255 for legal error, with the goal of determining the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

ORS 465.255(1)(a) provides, in relevant part:

"The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility ***:

"(a)  Any owner or operator at or during the time of the acts or omissions that resulted in the release."

ORS 465.200(24) defines "remedial action costs" as "reasonable costs which are attributable to or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, legal or enforcement activities, contracts and health studies." When a claim for contribution is made, the court determines apportionment of recoverable costs among the liable parties according to the equitable factors specified in ORS 465.257(1)(a) to (k).

Plaintiffs sought declaratory relief under ORS 465.255, asking the court to determine *who* is statutorily liable for remedial action costs resulting from environmental contamination, not to determine *what* amount of costs defendants are obligated to pay. In other words, plaintiffs did not bring a claim for contribution to recover remedial action costs under ORS 465.257. In Oregon, the Declaratory Judgments Act confers broad authority on the courts to grant declaratory relief. ORS 28.010. The breadth of a court's authority under the act is emphasized by ORS 28.120, which provides that "[t]his chapter is declared to be remedial. The purpose of this chapter is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." *See Hale*, 259 Or App at 383 ("Declaratory judgment is preventive justice, designed to relieve parties of uncertainty by adjudicating their rights and duties *before*

*wrongs have actually been committed.*" (Emphasis in original; internal quotation marks omitted.)).

According to defendants, because neither the jury nor the trial court made any findings or conclusions as to whether remedial action costs had been incurred and in what amount, the trial court's declaration that defendants are strictly liable under ORS 465.255 was erroneous. As we understand that argument, it reduces to the proposition that, despite the breadth of authority conferred by the Declaratory Judgment Act to settle uncertain legal relationships, the Oregon environmental statutes, ORS 465.200 to 465.455, create a heightened standard and requires a party to first incur cleanup costs before settling the uncertainty. Defendants cite no support for that position, nor do we see any indication that the legislature intended the statutes to be an exception to the applicability of the Declaratory Judgments Act. We find no textual or contextual barrier to courts fixing parties' respective obligations even though the full extent of the cleanup costs is unknown. *See, e.g.*, *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 241 P3d 710 (2010), *adh'd to as modified on recons*, 349 Or 657, 249 P3d 111 (2011). That is, defendants have not demonstrated that the legislature intended something different with ORS 465.200 to 465.455.

Here, the trial court entered judgment declaring defendants' statutory liabilities under ORS 465.255, consistent with the nature of the relief sought in plaintiffs' complaint, and the prospective rights of the parties to the proceeding. In sum, defendants have not shown how the trial court erred, as a matter of law, in declaring defendants as the only statutorily liable parties under ORS 465.255(1)(a).

C.   *Defendant's Contribution Counterclaim*

Defendants insist that, even if they are liable under the statute, the trial court erred in allocating all liability to defendants without respect to defendants' counterclaim asking the court to apportion remedial action costs between the parties under ORS 465.257. ORS 465.257 governs the allocation of responsibility for the costs of remedying a release of hazardous materials and provides, in part:

> "Any person who is liable or potentially liable under ORS 465.255 may seek contribution from any other person who is liable or potentially liable under ORS 465.255. When such a claim for contribution is at trial and the court determines that apportionment of recoverable costs among the *liable* parties is appropriate, the share of the remedial action costs that is to be borne by each party shall be determined by the court, using such equitable factors as the court deems appropriate[.]"

(Emphasis added.) Although the first sentence of the statute allows a person to seek contribution from *any* other person who is "liable or potentially liable under ORS 465.255," the second sentence leaves to the court the apportionment of the remedial action costs only "among the liable parties." *Id.* The court determines the share borne by each liable party according to various equitable factors. *Id.* Thus, under the plain language of the statute, although any potentially liable person could bring a claim for contribution, the court could assign responsibility only to a party found to be liable under ORS 465.255. *Newell v. Weston*, 150 Or App 562, 577, 946 P2d 691 (1997), *rev den*, 327 Or 317 (1998) (interpreting analogous language of ORS 465.325(6)(a), explaining the "finding of liability [under ORS 465.255] defined the universe of persons among whom the trial court could allocate responsibility for remediation costs").

Here, the jury found that heating oil had been released from the tank on the property during defendants' ownership, and that no oil had been released during plaintiffs' ownership. Based on those findings, the trial court entered judgment in favor of plaintiffs concluding that "defendants are liable parties under ORS 465.255(1)(a). Plaintiffs are not." In the light of our conclusion that the court did not err in concluding that defendants are the only liable parties under ORS 465.255(1)(a), it follows that the trial court did not err in rejecting defendants' contribution counterclaim and allocating all of the remedial action costs to defendants under ORS 465.257.[3]

---

[3] We do not address defendants' argument that the trial court should have independently considered whether plaintiffs "knew or reasonably should have known of the release" when they bought the property, such that plaintiffs could be held liable under ORS 465.255(1)(b), because the issue is not preserved on appeal. *Hurlbutt v. Hurlbutt*, 36 Or App 721, 725, 585 P2d 724 (1978), *rev den*,

D.   *The "As-Is" Clause and Addendum E*

In addition to the contribution counterclaim, defendants raise two other distinct but related assignments of error, one based on breach of contract and one based on ORS 465.255(5)(a). In both assignments, defendants argue, in essence, that the as-is clause and Addendum E in the sales contract constitute a release or hold harmless agreement between the parties, which protects defendants from bearing any remedial action costs resulting from the heating oil tank contamination.

We first address defendants' breach of contract counterclaim. Defendants argued that plaintiffs breached the contract by seeking declaratory relief because the as-is clause and Addendum E were intended to be a promise by plaintiffs to not sue defendants for environmental law liabilities caused by any defects of the property. The trial court granted plaintiffs' motion for directed verdict on the ground that the plain language of the as-is clause and Addendum E were unambiguous as a matter of law, and the contract terms did not support defendants' interpretation that plaintiffs agreed to not file a lawsuit against defendants. On appeal, defendants assign error to the trial court's grant of a directed verdict, contending that the contractual language is ambiguous and, thus, the jury should decide the question of ambiguity of the agreement. Plaintiffs respond by noting that the plain language of the as-is clause, read in the context of the sales agreement as a whole, is merely a disclaimer of warranties and does not serve as the basis for a breach of contract claim.[4]

We review the trial court's grant of directed verdict for legal error, considering the evidence in the light most

285 Or 73 (1979) ("In law or equity, a decree or judgment must be responsive to the issues framed by the pleadings and a trial court has no authority to render a decision on issues not presented for determination.").

   [4] Plaintiffs also assert that defendants failed to adequately preserve the error for review on the trial court's ruling on the motion for directed verdict. "Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Upon reviewing the trial transcript, we conclude that defendants preserved the error for appellate review.

favorable to the party against whom the verdict was entered. *Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307 (1996) (internal citations omitted). Here, the parties' different interpretations of the contract present to us a question of contractual construction focusing on the meaning of the as-is clause and Addendum E. To make a determination as to the meaning of disputed text, the court first examines the text of the disputed provision, in the context of the document as a whole, inquiring whether the provision at issue is ambiguous. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997); *see also Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 315-17, 129 P3d 773, *rev den*, 341 Or 366 (2006) (explaining that, in determining whether a contract term is ambiguous, a court must consider evidence of the circumstances of contract formation, if provided by the parties). Whether a contract is ambiguous is a question of law. *Yogman*, 325 Or at 361. A contract provision is ambiguous if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person. *May v. Chicago Insurance Co.*, 260 Or 285, 292-93, 490 P2d 150 (1971). In the absence of an ambiguity, the court construes the words of a contract as a matter of law, and the analysis ends. *Id.* at 292. Only where a contract is ambiguous does a jury determine the meaning of the contract as a matter of fact. *Yeatts v. Polygon Northwest Co.*, 313 Or App 220, 236-37, 496 P3d 1060 (2021).

We start with the text and context. The as-is clause in the sales agreement provides:

> "Except for Seller's express written agreements and written representations contained herein, and Seller's Property Disclosure, if any, Buyer is purchasing the property 'AS-IS', in its present condition and with all defects apparent or not apparent. ***"

(Uppercase in original.)

Here, the plain text of the as-is clause provides that plaintiffs agreed to purchase the property in its then-current condition. Although the clause is general in nature, it does not plausibly suggest that the parties intended to form a global resolution of any claims between them, or to allocate any state or federal environmental liabilities with

respect to the underground oil tank to plaintiffs. By way of contrast, the parties' agreement does contain an allocation of risk provision with respect to the wood stove on the property. Seller's counteroffer No. 1 states that "[b]uyer *accepts responsibility* of the wood stove." (Emphasis added.) That language demonstrates that the parties contemplated defendants would be released from damages caused by the wood stove. However, there is no similar contractual language with respect to the heating oil tank. The as-is clause here is merely a warranty disclaimer that applies to defendants' representations to the condition of the property, which precludes a breach of warranty action but does not bar plaintiffs' cause of action here.

Defendants, however, argue that Addendum E, when interpreted together with the as-is clause, establishes the parties' intent to allocate potential environmental law liability with regard to the heating oil tank to plaintiffs. We disagree. Under Addendum E, plaintiffs agreed to "release[] all contingencies in regards to this sale, including the inspections in general and specifically the presence of an underground oil tank." The plain text of Addendum E provides that plaintiffs waived their right to conduct an inspection of the heating oil tank. Without additional language indicating that plaintiffs assumed potential liability caused by the oil tank, reading Addendum E in conjunction with the as-is clause, does not change the plain meaning of the as-is clause or the contract as a whole.

Additionally, defendants claim that, at the time of selling the property, they "*thought* this was a 'clean break' from the [p]roperty, from which they were 'completely walking away,' and that they would not need or be required to pay for anything related to the [p]roperty that might come up later." Kathleen Hosack testified that she understood both the as-is clause and Addendum E to be a general agreement that plaintiffs "would hold [defendants] harmless and never come back after [them]." However, it is well established that one party's subjective understanding of a contract cannot override or supplement express contract terms. *Kabil Developments Corp. v. Mignot*, 279 Or 151, 157, 566 P2d 505 (1977). Issues of contractual intent are determined by the objective manifestations of the parties, not what they

subjectively believe that the terms mean. *Id.* Here, the plain text of the documents unambiguously show that the as-is clause and Addendum E are no more than a warranty disclaimer and an inspection waiver to the oil tank. Plaintiffs' lawsuit is based not upon a warranty theory but rather upon the statutory cause of action created by the Oregon environmental law statute. Accordingly, the trial court did not err in concluding the contract is unambiguous and granting a directed verdict on defendants' breach of contract counterclaim.

Relatedly, defendants renew their argument on appeal that the as-is clause and Addendum E preclude them from being responsible for the remedial action costs because those provisions of the sales contract are an agreement, under ORS 465.255(5)(a) "to insure, hold harmless or indemnify" defendants from any liability arising from the heating oil tank.[5] As discussed above, the plain text of the sales contract does not support defendants' assertion that plaintiffs agreed to assume environmental law liability resulting from the heating oil tank on the property. Therefore, ORS 465.255(5)(a) is inapplicable in the instant case because defendants do not have an "agreement to insure, hold harmless or indemnify" them with respect to the oil tank.

Finally, defendants' fifth assignment of error addresses the trial court's entry of a supplemental judgment awarding plaintiffs' attorney fees and costs for prevailing on defendants' breach of contract counterclaim. The assignment is contingent on our reversal of the judgment for the reasons set forth in the fourth assignment of error pertaining to the trial court's grant of a directed verdict on defendants' counterclaim. In the light of our conclusion that the trial court did not err in directing a verdict on defendants' breach of contract counterclaim, that assignment of error necessarily fails as well.

Affirmed.

---

[5] ORS 465.255(5)(a) provides that "[n]o indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from any person who may be liable under this section, to any other person, the liability imposed under this section. Nothing in this section shall bar any agreement to insure, hold harmless or indemnify a party to such agreement for any liability under this section."