302          August 14, 2024          No. 558

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Walter TRAPP, Jr.,
*Plaintiff-Appellant,*

*v.*

Annika HODGES,
*Defendant-Respondent.*

Multnomah County Circuit Court
20CV25735; A180665

En Banc

Chanpone P. Sinlapasai, Judge.

Argued and submitted December 5, 2023; resubmitted en banc April 23, 2024.

Willard E. Merkel argued the cause for appellant. Also on the opening brief was Merkel & Associates. Also on the reply brief was Merkel & Conner.

Thomas M. Christ argued the cause for respondent. Also on the brief was Sussman Shank LLP.

Before Lagesen, Chief Judge, and Ortega, Egan, Tookey, Shorr, Aoyagi, Powers, Mooney, Kamins, Pagán, Joyce, Hellman, and Jacquot, Judges.

EGAN, J.

Reversed and remanded.

Egan, J., filed the opinion of the court in which Lagesen, Tookey, Mooney, Kamins, Pagán, and Jacquot, JJ., joined.

Mooney, J., concurred and filed an opinion in which Lagesen, Ortega, Kamins, Joyce and Hellman, JJ., joined.

Aoyagi, J., dissented and filed an opinion in which Shorr and Powers, JJ., joined.

**EGAN, J.**

In this action seeking damages for personal injuries and property damages arising out of an automobile accident, plaintiff appeals from a general judgment awarding him damages of $2,500, challenging the trial court's denial of his petition for attorney fees under ORS 20.080,[1] which provides a right to fees to plaintiffs who prevail in a tort action seeking $10,000 or less in damages, if they made a pre-suit demand on the defendant for payment, and if the amount of damages recovered is not less than the amount offered by the defendant before the action began. The trial court denied plaintiff's petition based on the trial court's conclusion that defendant's pretrial offer exceeded the amount awarded in damages. For the reasons explained below, we agree with plaintiff that the trial court erred and therefore reverse the trial court's order and remand for consideration of plaintiff's attorney fee request.

The material facts are undisputed and mostly procedural. This action arose out of an automobile collision between plaintiff and defendant on February 20, 2019, that caused plaintiff physical injury and property damage. After being declared medically stationary by his health care providers, plaintiff made a written demand on defendant on June 20, 2019. In relevant part, that demand stated:

"Our settlement evaluation of this claim is $10,000 'new money.' This amount does not include PIP subrogation reimbursement owed State Farm because reimbursement is the State Farm's separate claim. Please let us know during the

---

[1] ORS 20.080(1) provides:

"In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $10,000 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant, and on the defendant's insurer, if known to the plaintiff, not less than 30 days before the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 30 days after the transfer of the action under ORS 46.461. However, no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 30 days after the transfer of the action under ORS 46.461, an amount not less than the damages awarded to the plaintiff."

next 30 days whether we might conclude this matter on the basis proposed. Please consider this to be a 30 day pre-suit notice issued pursuant to ORS 20.080."

Defendant's insurance carrier acknowledged the demand and tendered its offer on July 6, 2019. The offer stated:

"We've evaluated your client's claim based on the information presented and are prepared to resolve their injury claim for $3,900 (Three Thousand Nine Hundred Dollars), inclusive of all liens, plus PIP owed to State Farm."

It is undisputed that the personal injury protection (PIP) carrier, State Farm Insurance, had paid plaintiff benefits in the amount of $2,684.36.

Plaintiff filed a complaint against defendant alleging that he was injured due to defendant's negligence. Defendant's answer admitted liability but denied the extent of damages sought by plaintiff. Plaintiff amended his complaint at trial, to reduce his alleged damages for personal injury by $894.92, and to add an allegation of property damage in that same amount, so that the total amount of damages claimed remained at $10,000.

Following a jury trial, plaintiff was awarded $2,000 for personal injury and $500 for economic loss. Plaintiff then sought attorney fees in the amount of $31,960, and he outlined his compliance with ORS 20.080(1). Plaintiff argued that the jury's award exceeded defendant's effective pretrial tender of $1,215.64, after the deduction of State Farm's PIP lien of $2,684.36.

In its order denying the request, the trial court explained:

"6.   The Court finds the pretrial offer extended on behalf of defendant on July 6, 2020, was unambiguous and the $3,900.00 excluded plaintiff's PIP lien.

"7.   Defendant's pretrial offer of $3,900.00 exceeded plaintiff's jury award of $2,500.00. Pursuant to ORS 20.080, Plaintiff is not entitled to attorney's fee[s]."

We review the trial court's attorney-fee ruling for errors of law. *Callais v. Henricksen*, 314 Or App 553, 558, 499 P3d 821 (2021). As an initial matter, defendant argues

that plaintiff cannot recover attorney fees, because defendant's pre-suit demand did not meet the requirements set out in ORS 20.080.[2] Defendant argues that when plaintiff amended his complaint to include an allegation of property damage and reduce the alleged personal injury damages to keep the total damages under $10,000, the pre-suit demand was no longer adequate, as the demand fundamentally changed, and plaintiff's original demand therefore became void. Essentially, defendant argues that plaintiff failed to show that "written demand for the payment of such claim was made on the defendant, and on the defendant's insurer, if known to the plaintiff, not less than 30 days before the commencement of the action or the filing of a formal complaint" in accordance with ORS 20.080(1).

We reject defendant's argument. Plaintiff's pre-suit demand was straightforward and did not make any distinction between personal injury and property damage. The demand's only qualifiers were that it did not include State Farm's PIP subrogation and that it was under the $10,000 cap set forth in ORS 20.080. In contrast, defendant's tender specifically referenced only damages for personal injury. Defendant attempts to recast plaintiff's demand as an offer to settle only damages for personal *injury* when the demand

---

[2] ORS 20.080(1) is, first and foremost, a consumer protection statute. Oregon's appellate courts have repeatedly announced the fundamental purpose of ORS 20.080(1):

"'The purpose of the [statutorily required] notice is to give the defendant an opportunity to settle the case. ***

"'The purpose of the statute is to coerce tortfeasors and their insurance companies into settling small, legitimate claims where it is impracticable for the offended party to employ an attorney to prosecute his claim.'"

*Fresk v. Kraemer*, 185 Or App 582, 590, 60 P3d 1147 (2003), *aff'd*, 337 Or 513, 99 P3d 282 (2004) (quoting *Landers v. E. Texas Motor Frt. Lines*, 266 Or 473, 475-77, 513 P2d 1151 (1973)); *see also Heen v. Kaufman*, 258 Or 6, 8, 480 P2d 701 (1971) ("The obvious purpose of the statute is to encourage the settlement of damage claims where the amount involved is not large."); *Johnson v. White*, 249 Or 461, 462-63, 464, 439 P2d 8 (1968) (statute's purpose is "to prevent insurance companies and others having liability for torts from refusing to settle and pay just claims therefor. *** The statute is in the nature of a warning to plaintiffs not to inflate small claims beyond just amounts, in order that the tort-feasor may in good faith make settlement of such claims without resorting to the courts"); *Troute v. Aero Mayflower Transit Co.*, 78 Or App 564, 568, 718 P2d 745 (1986) (statute's purpose is "the prompt settlement of small but well-founded claims"). At its core, ORS 20.080(1) was designed to mitigate the systematic leveraging of litigation costs against consumers in the settlement of low value claims.

was not cast in those terms or limited to personal injury.[3] Therefore, we conclude that plaintiff's pre-suit offer met the requirements of ORS 20.080(1).

The remaining question is whether defendant's pre-trial offer exceeded the damages awarded by the jury, which, in turn, depends on whether defendant's offer, which stated that it was "inclusive of all liens, plus PIP owed to State Farm," included the amount owed to State Farm for its PIP payments. Plaintiff argues that defendant's pretrial tender was reasonably interpreted as "inclusive" of the amount paid by the PIP carrier—that is, that it included the amount subject to State Farm's PIP lien. Defendant argues that the only plausible interpretation of the tender was that all liens were included in the tendered amount but that the tender did not include the PIP subrogation claim, which would be paid or negotiated by defendant outside of the tender.

In interpreting an offer letter, the court will first determine whether the provision at issue is ambiguous. *See Allianz Global Risks v. ACE Property & Casualty Ins. Co.*, 367 Or 711, 734, 483 P3d 1124, *adh'd to as modified on recons*, 368 Or 229, 489 P3d 115 (2021). In doing so, the court applies "any definitions contained in the policy and otherwise giv[es] words their plain, ordinary meanings." *See Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or App 468, 480, 240 P3d 67 (2010), *rev den*, 349 Or 602, 249 P3d 123 (2011). For potentially ambiguous terms, "the court considers the context in which the term appears and then the context of the policy as a whole." *Allianz*, 367 Or at 734. "[I]f ambiguity remains, the term is construed against the drafter." *Id.*

The terms of a tender letter are ambiguous if those terms are capable of having two or more meanings. *See Coelsch v. State Farm Fire and Casualty Co.*, 298 Or App 207, 212, 445 P3d 899 (2019) ("'A term is ambiguous * * * *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continue[] to be reasonable.'" (quoting *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992) (emphasis in *Hoffman*; brackets in *Coelsch*); *Batzer Const., Inc. v. Boyer*, 204 Or App

_____

[3] Defendant makes no argument that plaintiff's demand was ambiguous on this particular issue.

309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006) (A term is ultimately ambiguous "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation.")).

Defendant's tender stated:

> "We've evaluated your client's claim based on the information presented and are prepared to resolve their injury claim for $3,900 (Three Thousand Nine Hundred Dollars), *inclusive* of all liens, *plus* PIP owed to State Farm."

(Emphases added.) Defendant argues that there is no ambiguity when the tender is read with the rules of grammar and syntax in mind. Specifically, defendant states that "*plus* is a conjunctive that means the same as *and*[.]" (Emphases in original.) Defendant further argues that the commas around "inclusive of all liens" signify that one parenthetical phrase is ending, and another is beginning, such that "inclusive of all liens" is separate from "plus PIP owed to State Farm." In her answering brief, defendant states:

> "Plaintiff's reading of the letter also ignores the two commas between '$3,900' and 'plus.' *** In Farmer's letter, the commas before 'inclusive' and after 'liens' mark the start and finish of the parenthetical phrase – *i.e.*, 'inclusive of all liens' – that modifies the first of the two objects of the preposition *for*. The first object is '$3,900 (Three Thousand Nine Hundred Dollars).' The second is 'PIP owed to State Farm.' The offer, then, was *for* both things - $3,900 and the PIP owed to State Farm. *** Plaintiff's contention that the offer was for $3,900 *less* the PIP owed to State Farm is an implausible interpretation of the letter as punctuated."

(Emphases in original.) Defendant argues that the rules of grammar restrict our interpretation and that, when the tender is read with the proper grammar, there can only be one plausible interpretation of the tender. In defendant's view, the only plausible interpretation of the tender is that defendant offered $3,900.00, less any liens, plus $2,684.36, the amount owed to State Farm for its PIP payments.

Plaintiff argues that the pre-trial offer letter was ambiguous, and that it was reasonable for plaintiff to understand the offer as including State Farm's PIP subrogation lien. First, plaintiff argues that because, in defendant's own

words, "*plus* is a conjunctive that means the same as *and*," the phrase "inclusive of all liens" includes the PIP amount owed to State Farm. Second, because plaintiff's pre-suit settlement demand specifically excluded a claim for PIP subrogation, interpreting defendant's pretrial tender stating that it was "inclusive" of all liens to include the amount paid by the PIP carrier was reasonable, because interpreting the provision otherwise would mean that defendant made a settlement offer on a claim that plaintiff did not own and did not assert.

A court interprets the terms of an insurance policy according to what the court perceives to be the understanding of the ordinary purchaser of insurance. *Totten v. New York Life Ins. Co.*, 298 Or 765, 770-71, 696 P2d 1082 (1985) (language in the policy should be given its common and ordinary meaning). Here, that principle is helpful in framing our interpretation of the offer's ambiguity because defendant's insurance carrier drafted the tender, and plaintiff, an ordinary purchaser of insurance, was presented with the tender. We agree with plaintiff that the tender is ambiguous, because, from the perspective of the ordinary purchaser of insurance, and giving the text its common and ordinary meaning, the offer is "capable of more than one sensible and reasonable interpretation." *Batzer Const., Inc.*, 204 Or App at 313. Given the relevant context, that plaintiff's settlement demand specifically excluded PIP reimbursement, interpreting defendant's pre-trial offer letter as inclusive of the PIP subrogation claim was reasonable.

The issue is not, as defendant argues and the dissenting opinion concludes, whether the tender, as written, is grammatically correct.[4] As Judge Mooney's concurrence reflects, the grammatical rules for the usage of commas are themselves unsettled, something that counsels against applying them rigidly—at least when it comes to commas. 334 Or App 312-13 (Mooney, J., concurring). That is

---

[4] The dissent argues that we cannot find that the offer was ambiguous because we would be assuming the possibility of a grammatical mistake to create an ambiguity. 334 Or App at 316-17 (Aoyagi, J., dissenting). However, we are not concluding that the offer was grammatically incorrect or making any conclusions about the sentence's grammatical usage, but rather that, as written, there exist two plausible interpretations of the offer.

particularly so here, where we are called upon to evaluate whether the writing of a private party—not a legislative or judicial body—reasonably can be read more than one way. It may be reasonable to apply grammatical rules to the work of legislatures and courts, especially where such bodies have announced that they adhere to a particular style manual or set of grammatical rules, although the Supreme Court has cautioned against mechanical reliance on grammar in interpreting statutes. *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 130, 379 P3d 462 (2016) ("[W]hile grammatical 'rules' are helpful in statutory interpretation, they are often subject to qualification and should not be applied mechanically in seeking to discern the meaning of a provision. Rather, because the legislature sometimes expresses itself in unusual ways, the best reading of a statute is not necessarily the most obvious one, grammatically speaking.") Such caution is even more imperative when it comes to construing the writings of private parties, who are unlikely to have consulted each other, or reached consensus, on principles of grammar and style.

So the question is not whether the tender was grammatically correct. Rather, the question is whether the use and placement of the comma distinctly delineate whether the PIP amount is part of or separate from the $3,900 for all reasonable readers. They do not, and, as a result, give rise to an ambiguity as to whether PIP was included from, or excluded from, the offer. As a general rule, ambiguous language is construed against the drafter. *Hoffman*, 313 Or at 470-71. Applying that rule here, we resolve the ambiguity against defendant, interpreting defendant's tender $3,900.00 offer as a net offer to plaintiff of $1,215.64, after deduction of the PIP lien of $2,684.36.[5]

The jury awarded plaintiff $2,000 for personal injuries and $500 in economic damages. **The award exceeded respondent's tender, which effectively offered plaintiff $1,215.64.** Thus, plaintiff's award at trial "beat" defendant's

---

[5] On appeal, the parties do not contend that there is any extrinsic evidence that would aid in resolving the meaning of the ambiguous term in defendant's tender. Therefore, it is appropriate for us to construe the term as a matter of law. *See Cryo-Tech, Inc. v. JKC Bend, LLC*, 313 Or App 413, 424, 495 P3d 699 (2021), *rev den*, 369 Or 211 (2022).

net offer by $784.36. Therefore, under ORS 20.080, plaintiff is entitled to reasonable attorney fees for his noneconomic damages.

    Reversed and remanded.

    **MOONEY, J.,** concurring.

    I agree that this matter should be sent back to the trial court for consideration of plaintiff's attorney fee request. I write separately to address the question of grammar and, in particular, the comma.

    There are rules of grammar. There are canons of grammar. There is even a grammar canon: "The doctrine that words are to be given the meaning that proper grammar and usage would assign them * * * ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 430 (2012). Whatever you call them, rules of grammar are seldom absolute. And like language itself, they evolve over time. We have a *Style Manual*, used daily by Court of Appeals clerks, staff attorneys, and judges, that devotes an entire section to grammar. That section is presented as a "guide," and it begins with this statement:

> "This section addresses issues of word treatment, grammar, punctuation, and usage that arise frequently in opinion drafting. It is not exhaustive. Grammar and usage are not exact sciences; there are many questions of style about which reasonable minds can differ. To promote consistency, however, the courts generally follow the conventions outlined below."

Oregon Appellate Courts, *Style Manual* 66 (2023), https://www.courts.oregon.gov/publications/Documents/UpdatedStyleManual2002.pdf.

    When we are called upon to determine what a writing means, we often focus our inquiry on what the author intended the writing to mean. That is our focus when we construe statutes. *See* ORS 174.020(1)(a) (courts "shall pursue the intention of the legislature if possible"); *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (the goal when construing a statute is to discern legislative intent). And that is our focus when we construe contracts and written agreements. *See, e.g.*, ORS 42.240 ("In the construction of

an instrument the intention of the parties is to be pursued if possible[.]"); *Bo and Lia Holdings LLC v. 2021 Morrison LLC*, 315 Or App 372, 385, 501 P3d 1109 (2021), *rev den*, 369 Or 785 (2022) (explaining that "the intent of the parties to a contract controls a court's interpretation of it" (internal quotation marks omitted)).

The writing in question is not a statute. It is not a contract. It is a letter. The letter is on Farmers Insurance letterhead, and it is signed by a "Field Claims Representative." Farmers insures the at-fault driver—defendant. The letter was addressed to the injured party's attorney, and it was sent in response to their pre-litigation settlement demand. Our job is to determine what Farmers meant when it sent that letter. The record does not contain any testimony— written or oral—from the Farmers representative who wrote the letter, and, thus, we are left to examine the words in the letter in the context in which they were written to determine what he meant. In doing so, we consider the circumstances under which the letter was written, including the letter writer's relationship to Farmers, and the relationships among and between all the parties and key players. ORS 42.210 - 42.250. The goal is to determine, if reasonably possible, what offer Farmers intended to make through that letter.

The way in which the words are structured into phrases and sentences certainly helps us understand what was written, but we examine the letter as a panel of judges and not as "a panel of grammarians." *Flora v. United States*, 362 US 145, 150, 80 S Ct 630, 4 L Ed 2d 623, *reh'g den*, 362 US 972 (1960). I agree with the majority of my colleagues who conclude that the question "is not whether the tender was grammatically correct." 334 Or App at 310. The injured party's request for attorney fees does not, and should not, turn on the presence or absence of a comma in Farmers' letter. Many things have been said about the comma over time. Indeed, the significance of commas has been the subject of rigorous debate among lawyers, newspaper editors, and educators. We devote more pages of our *Style Manual* to the comma than to any other punctuation mark. Lynne

Truss devoted an entire chapter to the comma in her best seller *Eats, Shoots & Leaves*. She mused that,

> "When it comes to improving the clarity of a sentence, you can nearly always argue that one should go in; you can nearly always argue that one should come out."

Lynne Truss, *Eats, Shoot & Leaves: The Zero Tolerance Approach to Punctuation* 80 (2003). Indeed, whether reading a letter, a contract, or a text message, I can almost always identify a comma to remove or a place to insert one.

I take no issue with the view that commas serve different functions, for different reasons, at different times. I agree that some commas are more necessary than others. But I do not view this as a case where the placement of a comma was so clearly required or that its presence was so grammatically correct that it rendered Farmers' offer unambiguous as a matter of law. There is nothing about the placement of commas around the phrase "inclusive of all liens" and the use of the word "plus" that rings the bell of textual certainty to the point of an unambiguously clear tone.

The use of the "inclusive" and "plus" phrasing in Farmers' offer is, frankly, odd. It should come as no surprise that the majority and dissenting opinions read that sentence differently. I reject the notion that fidelity to the "normal rules of grammar" elevates one reading over the other. 334 Or App at 315 (Aoyagi, J., dissenting). Moreover, I am not convinced that characterizing the phrase "inclusive of all liens" as a "nonrestrictive adjectival phrase" is correct. *Id*. Whether the offer included or excluded liens was essential to understanding the offer because it impacted how much cash plaintiff would actually receive had he accepted it. And given that the letter was written in response to a pre-litigation demand made under ORS 20.080, it was also essential to understand what the comparator number would be if, as happened here, a need arose down the road to compare it to the verdict. I would characterize "inclusive of all liens" as a restrictive adjectival phrase which, according to the rules of grammar, means that commas should not have been used.

If I was an English teacher, I would probably give the Farmers representative a C- for his use of grammar in the letter. But I am not an English teacher, and this is not an academic exercise. Entirely ordinary and reasonable people, perhaps not unlike the majority and dissenting judges, would read Farmers' offer in more than one way. That means that the offer is ambiguous. The commas do not eliminate that ambiguity; they help create it. We must construe the letter against its drafter—Farmers. I concur.

Lagesen, C. J., and Ortega, Kamins, Joyce, and Hellman, JJ., join in this concurrence.

**AOYAGI, J.,** dissenting.

The trial court did not err when it applied ORS 20.080(1) to deny attorney fees and costs to plaintiff, based on plaintiff having turned down a pre-suit offer more favorable than the trial verdict. The majority concludes that the pre-suit offer was ambiguous and, on that basis, reverses the trial court's ruling and requires an award of attorney fees and costs to plaintiff. The offer was unambiguous, however, so I would affirm the trial court's ruling. Accordingly, I respectfully dissent.

Plaintiff and defendant were involved in an automobile accident. Plaintiff sent a pre-suit notice to defendant, stating, in relevant part:

> "Our settlement evaluation of this claim is $10,000 'new money.' This amount does not include PIP subrogation reimbursement owed State Farm because reimbursement is the State Farm's separate claim. Please let us know during the next 30 days whether we might conclude this matter on the basis proposed. Please consider this to be a 30 day pre-suit notice issued pursuant to ORS 20.080."

Defendant's insurer responded:

> "We've evaluated your client's claim based on the information presented and are prepared to resolve their injury claim for $3,900 (Three Thousand Nine Hundred Dollars), inclusive of all liens, plus PIP owed to State Farm."

Plaintiff rejected the offer and proceeded to trial. A jury awarded plaintiff $2,500. The trial court denied attorney fees

to plaintiff under ORS 20.080(1), because plaintiff had turned down a pre-suit offer more favorable than the verdict received.

The majority reverses that ruling, holding that defendant's offer was ambiguous. Like a contract provision, an offer is ambiguous if it is susceptible to more than one plausible interpretation. *Frost v. Jacobs*, 330 Or App 61, 76 & n 6, 542 P3d 916 (2024). Here, the trial court read the offer as unambiguously offering to pay $3,900 to plaintiff, plus whatever PIP amount was owed to State Farm. The majority acknowledges that as a plausible interpretation but posits an alternative interpretation: that the PIP reimbursement to State Farm was to be taken out of the $3,900. State Farm paid $2,684 in PIP benefits, so, under that reading, defendant offered to pay $1,216 to plaintiff and $2,684 to State Farm.

The majority's alternative interpretation is not plausible, for multiple reasons. The first reason is that it disregards the grammatical structure of the sentence and incorrectly treats these two sentences as equivalent:

- We are prepared to resolve their injury claim for $3,900, inclusive of all liens, plus PIP owed to State Farm.

- We are prepared to resolve their injury claim for $3,900, inclusive of all liens plus PIP owed to State Farm.

Applying the normal rules of grammar, those two sentences have different meanings. In the first sentence (the actual sentence used in the offer), "inclusive of all liens" is a nonrestrictive adjectival phrase modifying "$3,900"—with two commas setting it off as a separate clause—followed by a conjunctive "plus" linking the two components of the offer, "$3,900" and "plus PIP owed to State Farm." If "plus PIP owed to State Farm" was meant to be part of the adjectival phrase "inclusive of all liens," then placing a comma in the middle of it is grammatically incorrect and changes the meaning of the sentence.

In the second sentence (the hypothetical sentence posited by the majority), the lack of a comma results in a single adjectival phrase, "inclusive of all liens plus PIP owed to State Farm," which modifies "$3,900." That is an unusual way to use the word "plus," but that is how the majority imagines the sentence, and, if the offer were actually written

that way, then I would agree that "PIP owed to State Farm" has to be considered part of what is included in the $3,900. The offer was not written that way, however, and I reject the idea that we should disregard proper grammar to create an ambiguity.

The first sentence is grammatically correct and has a singular meaning, so it is unambiguous. The only way to read it as ambiguous is to posit that the drafter made a grammatical mistake that resulted in him saying something different from what he meant. Certainly, grammatical errors can lead to ambiguity. *See, e.g.*, *Hurst/Van Dusen v. Rosenblum*, 366 Or 260, 265, 461 P3d 978 (2020) ("The comma between 'industry' and 'fossil fuels' makes the first clause of the caption ambiguous, and that ambiguity could confuse some voters."); *Wilson v. Dept. of Corrections*, 259 Or App 554, 557 n 4, 314 P3d 994 (2013) ("If there were a comma between 'material' and 'which,' we would have an altogether different case, because the rule would imply that all sexually explicit material is presumed to be harmful. By using 'which' instead of the more grammatically proper 'that,' the rulemakers create[d] an ambiguity." (Emphases omitted.)). But when a sentence is grammatically correct, there is no reason to posit a grammatical mistake.

When drafters use grammatically correct language that makes sense, we normally assume that they meant what they said. *See generally State v. Webb*, 324 Or 380, 386-87, 927 P2d 79 (1996) (applying "general grammatical rules" to interpret a statute, including rules about comma usage as relevant to the meaning of modifying clauses); *Curly's Dairy v. Dept. of Agriculture*, 244 Or 15, 21, 415 P2d 740 (1966) ("Punctuation marks are a proper guide to interpreting a statute and in ascertaining the legislative intent."); *State v. Berger*, 284 Or App 156, 159-60, 392 P3d 792 (2017) (recognizing that "the meaning conveyed through the grammar and structure" of statutory language should be considered "to ascertain the statute's plain meaning," and considering as part of construing the statutory provision at issue that the legislature "followed th[e] grammatical rules" (internal

quotation marks omitted)).[6] Accordingly, in this case, we should assume that the drafter of the offer meant what he said, rather than positing a grammatical error to create an ambiguity.

A second, related reason that the majority's alternative interpretation of the offer is implausible is that disregarding the drafter's use of commas has the effect of changing the meaning of "plus" to "minus" or "less," words with the opposite meaning. By disregarding the grammar of the sentence in the offer, the majority creates a situation where these three sentences would all have the same meaning:

- We are prepared to resolve their injury claim for $3,900, inclusive of all liens, plus PIP owed to State Farm.

- We are prepared to resolve their injury claim for $3,900, inclusive of all liens, minus PIP owed to State Farm.

- We are prepared to resolve their injury claim for $3,900, inclusive of all liens, less PIP owed to State Farm.

Those sentences do not have the same meaning. By putting a comma after "inclusive of all liens" and using the conjunction "plus," defendant unambiguously conveyed that the "PIP owed to State Farm" was *in addition to* the "$3,900, inclusive of all liens," not an amount to be subtracted from the $3,900.

A third reason that the majority's alternative interpretation is implausible is that it disregards the notice from plaintiff to which defendant was responding. Plaintiff sought $10,000 in "new money," not to include "PIP subrogation reimbursement owed State Farm because reimbursement is the State Farm's separate claim." In response, defendant offered $3,900 in new money, plus whatever PIP reimbursement was owed to State Farm. Both parties thus treated the PIP reimbursement to State Farm as separate from what would be paid to plaintiff. That defendant's offer tracks plaintiff's demand reaffirms that the offer means

---

[6] Indeed, even when something is awkwardly written, it does not follow that it is ambiguous. *See, e.g.*, *Garcia v. Clark*, 300 Or App 463, 464 455 P3d 560 (2019) (en banc) (concluding that an awkwardly written will was nonetheless unambiguous).

exactly what it says. *See Frost*, 330 Or App at 77 (relying in part on a disconnect between the plaintiff's demand and the defendant's response to explain why the language of a pre-suit offer under ORS 20.080 was ambiguous).

Finally, I disagree with the notion that the meaning of commas is inherently ambiguous and unknowable—or, according to the concurrence, knowable only by reference to the subjective intent of the drafter. Oregon "subscribes to the objective theory of contracts," including as to contract formation. *Kabil Developments Corp. v. Mignot*, 279 Or 151, 156, 566 P2d 505 (1977) (internal quotation marks omitted). "[T]he law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts." *Kitzke v. Turnidge*, 209 Or 563, 573, 307 P2d 522 (1957); *see also Rudder v. Hosack*, 317 Or App 473, 486-87, 506 P3d 1156, *rev den*, 370 Or 56 (2022) ("Issues of contractual intent are determined by the objective manifestations of the parties, not what they subjectively believe that the terms mean."). Here, the written offer is objectively clear, which is the end of the analysis.

The majority states, "As Judge Mooney's concurrence reflects, the grammatical rules for the usage of commas are themselves unsettled, something that counsels against applying them rigidly—at least when it comes to commas." 334 Or App at 309 (Egan, J., majority); *see also* 334 Or App at 312-13 (Mooney, J., concurring). But there is a critical difference between commas that serve a grammatical purpose and thus affect the meaning of a sentence (like the comma at issue in this case) and discretionary commas used for readability. *See* Lynne Truss, *Eats, Shoots & Leaves*, 70 (2003) (commas serve "two quite distinct functions," one of which is "[t]o illuminate the grammar of a sentence," and the other of which is "[t]o point up—rather in the manner of musical notation—such literary qualities as rhythm, direction, pitch, tone and flow"); *id.* at 27 ("My own position is simple: in some matters of punctuation there are simple rights and wrongs; in others, one must apply a good ear to good sense.").

The fact that *some* commas are discretionary does not mean that *all* commas have debatable meaning. Indeed,

the book *Eats, Shoots & Leaves*, cited by the concurrence, emphasizes the importance of using commas intentionally so as to avoid ambiguity, stating, "More than any other mark, the comma requires the writer to use intelligent discretion and to be simply alert to potential ambiguity." *Id.* at 96. Disregarding grammatical rules regarding commas and taking a casual approach to them—as the majority does in this case—wreaks "semantic havoc." *See id.* at 82 ("[R]ules certainly exist for the comma and we may as well examine some of them. The fun of commas is of course the semantic havoc they can create when either wrongly inserted ('What is this thing called, love?') or carelessly omitted ('He shot himself as a child.').").

As Truss puts it, "The reason to stand up for punctuation is that without it there is no reliable way of communicating meaning." *Id*. at 20.

For those reasons, the trial court did not err in ruling as it did. Contrary to the majority's conclusion, the offer drafter's use of a comma *does* in fact "distinctly delineate whether the PIP amount is part of or separate from the $3,900[.]" 334 Or App at 310 (Egan, J., majority). It makes clear that it is separate. I would therefore affirm and respectfully dissent.

Shorr, and Powers, JJ., join in this dissent.